56 Ill.2d 223 (1973)
306 N.E.2d 304
In re ESTATE OF AMOS P. BAXTER, Deceased.  (The Second National Bank of Danville, Admr., Appellee,
v.
Frank Brewer et al., Appellants.)
No. 45690.
Supreme Court of Illinois.
Opinion filed November 30, 1973.
Rehearing denied January 29, 1974.
Albert Saikley and William Garrison, of Danville, for appellants.
Sebat, Swanson & Banks and Brittingham, Sadler & Meeker, both of Danville (Ralph J. Swanson, of counsel), for appellee.
Judgments reversed.
MR. JUSTICE DAVIS delivered the opinion of the court:
The Second National Bank of Danville, Illinois, administrator with will annexed of the estate of Amos P. Baxter, deceased, petitioner herein, brought this action pursuant to section 183 of the Probate Act (Ill. Rev. Stat. 1967, ch. 3, par. 183). The issue involved is whether or not a bank certificate of deposit, registered "Amos Baxter or Frank Brewer or Carrie Brewer as joint tenants with right *224 of survivorship," was on the death of Amos Baxter, the property of Frank and Carrie Brewer, the surviving joint tenants, respondents herein, or the property of the estate of the decedent, Amos P. Baxter. The certificate of deposit was in the following form:

The trial court held that the bank certificate of deposit was the property of the estate and ordered the surviving joint tenants to deliver the certificate of deposit to the administrator. The appellate court affirmed (9 Ill. App.3d 92) and we allowed petition for leave to appeal. Both the trial and appellate courts treated the certificate of deposit as an ordinary bank deposit and held that, in the absence of an agreement in writing signed by the prospective joint tenants, no joint tenancy was created. Both courts held that the transaction was controlled by subsection (a) of section 2 of the Act in relation to Joint Rights and Obligations (Ill. Rev. Stat. 1967, ch. 76, par. 2(a)). In deciding the issue before us, consideration must be given not only to subsection (a), but also to the introductory paragraph of section 2 and to subsection (b). Section 2 of the Act in relation to Joint Rights and Obligations (Ill. Rev. Stat. 1967, ch. 76, par. 2(a)(b)) provides as follows:
"2. Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or *225 owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common; provided, that the foregoing shall not be deemed to impair or affect the rights, privileges and immunities, as set forth in the following provisos, (a), (b), (c) and (d):
(a) When a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payment so made;
(b) When shares of stock, bonds or other evidences of indebtedness or of interest are or have been issued or registered by any corporation, association or other entity in the names of two or more persons as joint tenants with the right of survivorship, such corporation, association or other entity and their respective transfer agents may, upon the death of any one of such registered owners, transfer said shares of stock, bonds, or other evidences of indebtedness or of interest to or upon the order of the survivor or survivors of such registered owners, without inquiry into the existence, validity or effect of any such will or other instrument in writing or the right of such survivor or survivors to receive the property, and without liability to any other person whomsoever who might claim an interest in or a right to receive all or a portion of the property so transferred." (Emphasis ours.)
Subsection (b) does not require an agreement to be signed to create a joint tenancy in shares of stock, bonds or "other evidences of indebtedness or of interest" when shares of stock or "other evidences of indebtedness or of interest" have been issued or registered by any corporation, association or entity in the names of two or more persons as joint tenants with the right of survivorship, and it further provides for the payment of such interest to the *226 survivor or survivors of such joint tenants without liability. We find the certificate of deposit to be an "other [evidence] of indebtedness or of interest" and that the clause "or other evidences of indebtedness", as used in subsection (b), is sufficiently broad to include a certificate of deposit.
The certificate of deposit in the Rankin State Bank, Rankin, Illinois, was prepared by Margaret Hendricks, an employee of the bank, at the direction of Melvin Symmonds, an officer of the bank. Melvin Symmonds directed the registration upon being advised by Amos Baxter that he wanted to be sure the certificate of deposit was registered in such manner that it would pass to Frank Brewer and Carrie Brewer at his death. No separate signature card regarding the certificate of deposit was signed. Baxter gave the certificate of deposit to Frank Brewer and Carrie Brewer, who placed it in their safety deposit box for safekeeping.
The trial court held, as a matter of law, that the failure to sign an agreement frustrated the creation of a joint tenancy, that the certificate of deposit was a "deposit" and fell within the purview of subsection (a) of section 2 requiring a signed agreement by all parties. The court did not find a failure of donative intent or delivery, but specifically held that: "In the absence of a joint tenancy agreement signed by the depositors, the bank was not authorized to pay the proceeds in the deposit to the survivors and under those circumstances the actual issuance of a certificate of deposit in joint tenancy has no underlying res and is a nullity." (Emphasis added.)
The introductory paragraph of section 2 of the Act in relation to Joint Rights and Obligations provides that except by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right of survivorship as between joint tenants or owners of personal property is hereby abolished and all such joint tenancies shall be *227 deemed tenancies in common; provided that the foregoing shall not be deemed to impair or affect the rights, privileges and immunities, as set forth in the provisos (a), (b) and (c).
In the case at bar, the certificate of deposit was an "other instrument in writing" which not only adequately expressed an intention to create a joint tenancy in personal property, but also did in fact create a joint tenancy with right of survivorship as between the joint tenants therein named. Thus, the certificate of deposit is not a deposit within the provisions of subsection (a) of section 2, but rather falls within the proviso (b) as "other evidences of indebtedness or of interest" not requiring an agreement to be signed by all parties to create a joint tenancy, and also comes within the exception specified in the introductory paragraph of section 2.
In Frey v. Wubbena (1962), 26 Ill.2d 62, at pages 67 and 68 this court stated:
"A careful study of the first portion of proviso (a) of section 2 would seem to indicate that it is broad enough to authorize creation of joint tenancy in bank accounts by issuing a passbook in the names of the depositors as joint tenants without the execution of an agreement signed by the parties in accordance with the latter portion of the proviso. However, it was held in Doubler v. Doubler, 412 Ill. 597, that it is necessary that such an agreement be signed by the parties in order to create rights of survivorship in the deposit. There has been no material change in the statute since Doubler and that decision will not now be disturbed."
And, at page 69, the court stated:
"A statutory right of survivorship exists and we think it unnecessary to follow the principles of common-law joint tenancy whether an agreement has been signed by the parties or not. The registration of stock ownership upon the books of *228 the corporation in appropriate statutory language is sufficient to vest legal title, subject to divestment if the circumstances surrounding the transaction warrant it. This view may seem at odds with our approval of the holding in the Doubler case that an agreement must be signed by the parties to effectuate survivorship rights in a bank account. Aside from the differences in the several statutory provisions, we think there is ample justification in the very nature of the property. Corporate stock is issued in fixed units of ownership (shares of stock) and remain fixed, whereas a bank account is a fluctuating res, subject to daily change in amount by any of the joint owners. Joint tenancy in such an unstable atmosphere as a shifting bank account should be created by contract of the parties detailing their rights and duties under existing statutory authority. Bank accounts are in this respect similar to saving and loan capital accounts, and a joint account in the latter is not recognized by the Illinois Savings and Loan Act unless there is an agreement in writing."
The certificate of deposit in question was issued in a fixed amount, $13,500, and it was not subject to daily change by any of the joint owners. Thus, this certificate of deposit was unlike the fluctuating res in an ordinary bank account, and any unstable atmosphere which, from a policy viewpoint, might call for joint owners to contract, detailing their rights and obligations under the statute with reference to an ordinary bank account, did not exist with reference to this certificate of deposit. Consequently, an agreement in writing signed by all parties was not required to create a valid joint tenancy in the certificate of deposit in question.
As heretofore noted, Frey v. Wubbena (1962), 26 Ill.2d 62, differentiates corporate stock from ordinary bank deposits. In Frey, at page 69, this court stated:

*229 "Promissory notes when drawn in appropriate language, are instruments in writing within the meaning of section 2, (Ill. Rev. Stat. 1961, chap. 76, par. 2,) and constitute exceptions to the provision, abolishing joint tenancy in personal property."
This certificate of deposit has all the essential elements of a promissory note. It contains an unconditional promise to pay a certain sum of money absolutely. (McCormick v. Hopkins (1919), 287 Ill. 66, 71; 10 Am.Jur.2d, Banks, secs. 455, 456 et seq.) It should be governed by the same rules as a promissory note with reference to the creation of joint-tenancy rights therein.
The certificate of deposit in this case is within the definition of a negotiable instrument set forth in the Uniform Commercial Code (Ill. Rev. Stat. 1967, ch. 26, par. 3-104(1)(a)(b)(c)(d) and (2)(a)(b)(c)(d)), which provides:
"(1) Any writing to be a negotiable instrument within this Article must
(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and
(c) be payable on demand or at a definite time; and
(d) be payable to order or to bearer.
(2) A writing which complies with the requirements of this section is
(a) a `draft' (`bill of exchange') if it is an order;
(b) a `check' if it is a draft drawn on a bank and payable on demand;
(c) a `certificate of deposit' if it is an acknowledgement by a bank of receipt of money with an engagement to repay it;
(d) a `note' if it is a promise other than a certificate of deposit."
Article 4 of the Code deals with bank deposits and collections. Section 4-104 is entitled "Definitions and Index of Definitions," and section 4-104(3) of the Code provides:

*230 "(3) The following definitions in other Articles apply to this Article:
* * *
`Certificate of deposit' Section 3-104."
Section 3-104 is quoted above.
This certificate of deposit is in a fixed sum, and has all the differences from a regular withdrawable bank deposit that are noted in reference to corporate stock by this court in the above quote from Frey v. Wubbena (1962), 26 Ill.2d 62, at page 69. Additionally, it has all the characteristics of a promissory note which this court stated at page 69 in Frey v. Wubbena to be an exception to subsection (a) of section 2 of the Joint Rights and Obligations Act.
Accordingly, the judgments of the circuit and appellate court herein are reversed.
Judgments reversed.
MR. JUSTICE KLUCZYNSKI, dissenting:
I disagree with the majority opinion which holds that a separate signature card signed by all parties is not necessary for creation of a valid joint tenancy for a time certificate of deposit. I would affirm the judgment of the appellate court.
The majority opinion determines that the aforesaid instrument may be classified as an evidence of indebtedness under section 2(b) of the Joint Rights and Obligations Act, which does not require a separately signed agreement to create a joint tenancy. I find this reasoning unconvincing. In McCormick v. Hopkins, 287 Ill. 66, 71, it was recognized that the issuance of the certificate of deposit arises from a deposit transaction. Joint passbook and checking accounts have been described as deposit accounts. (Doubler v. Doubler, 412 Ill. 597, 601; In re Estate of Wilson, 404 Ill. 207, 216.) As the court recognized in People v. McGraw Electric Co., 375 Ill. 241, 250, "Bank deposits * * * create the relationship of debtor and creditor." Thus the mere fact that the certificate in this case *231 may be characterized as an evidence of indebtedness is not controlling, for in Doubler and Wilson it was held that a separate signed agreement was necessary to create a joint tenancy.
The majority opinion seeks to buttress its position by quoting at length from Frey v. Wubbena, 26 Ill.2d 62, in an attempt to equate a time certificate of deposit to shares of corporate stock and a promissory note with emphasis on the latter's negotiable characteristic. Such comparison would seem inappropriate, for in Frey certain time certificates of deposit were considered by the court and disposition made of them without a specific attempt to compare them to stock shares or promissory notes. Moreover the majority, while relying on McCormick v. Hopkins, 287 Ill. 66, seemingly ignores incisive language contained therein at pages 71 and 72. "While the certificate of deposit is a promissory note and is negotiable, nevertheless the transaction out of which it arises is a deposit and not a loan. * * * The word `deposit', according to its commonly accepted and generally understood meaning among bankers and by the public, includes not only deposits payable on demand and subject to check, but deposits not subject to check, for which certificates, whether interest-bearing or not, may be issued, payable on demand or on certain notice or at a fixed future time." This language in part may be said to describe an instrument which could be negotiable, yet McCormick recognizes nonetheless that the instrument originates from a deposit. Negotiability is therefore not the determinative characteristic.
The majority opinion says that a certificate of deposit has the characteristics of a corporate share of stock as noted in Frey v. Wubbena. It concludes that this similarity differentiates a time certificate of deposit from a regular withdrawable bank account. From its discussion the majority makes clear that the crucial comparison attendant to a share of stock and a time certificate of deposit is the *232 lack of a "fluctuating res." The majority attempt to equate these investment devices on this general basis is illusory in light of present-day financial practices which permit withdrawal of funds from time certificate accounts.
It is recognized that financial institutions are subject to various Federal regulations pertaining to their operation. On its face the present instrument purports to prohibit withdrawal of the funds until the maturity date, thereby lending support to the majority's position that the amount of funds in a time certificate account remains stable. Present Federal banking regulations, however, permit withdrawal of funds represented by time certificates of deposit prior to maturity. These regulations allow withdrawal of such funds in an insured "member bank" if that institution agreed that a sufficient emergency necessitated payment. (12 C.F.R. sec. 217.4(d) (1973).) This regulation has recently been modified to the extent that urgent circumstances need no longer exist before funds may be withdrawn prior to the maturity date. However, early withdrawal will allow the bank to impose a penalty resulting in a loss of interest on the funds. (38 Fed. Reg. 18641 (July 13, 1973).) Early withdrawal of funds evidenced by a time certificate of deposit in insured "nonmember banks" was similarly restricted. (12 C.F.R. sec. 329.4(a), (d) (1973).) This regulation has been comparably modified. 38 Fed. Reg. 18543 (July 12, 1973).
The aforementioned Federal regulations should not be determinative of the issue in this case, yet I believe they are of value to a complete understanding of the matter, for they demonstrate that the "res" of the certificate may be subject to fluctuation through withdrawal of funds from the time certificate account. In fact I believe that examination of these regulations accurately suggests the possibility that the form of instrument in this case is not being presently issued.
I am of the opinion that the substance of the *233 transaction must govern. (Lanigan v. Apollo Savings, 52 Ill.2d 342.) The various reasons upon which the majority relies, i.e., evidence of indebtedness, negotiability, and inability to change the amount of funds in a time certificate of deposit, are not of consequence to the determination of this matter. McCormick v. Hopkins makes clear that this is a deposit, and it must therefore be governed by section 2(a) of the Joint Rights and Obligations Act, which also pertains to passbook and checking accounts. Further, to hold as the majority does emasculates the explicit legislative intent expressed in section 2(a) which requires a separately signed agreement by all necessary parties in order to create a valid joint tenancy for a "deposit in any bank * * * transacting business in this State * * *."