*In re* ESTATE OF JAMES WARREN VALE, Deceased.—(FLORENCE E. LINDSEY, Adm'x of the Estate of James Warren Vale, Petitioner-Appellant, *v.* NELSON E. LAWSON, Respondent-Appellee.)

Third District   No. 76-448

Opinion filed December 29, 1977.

John M. Ritchie, of Pekin, for appellant.

Carl F. Reardon, of Moehle, Reardon, Smith & Day Ltd., of East Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Petitioner-appellant, Florence Lindsey, administratrix of the estate of James Vale, commenced this action as a citation proceeding in the circuit court of Tazewell County seeking to recover funds allegedly belonging to the estate of James Vale from the respondent-appellee, Nelson Lawson. After the petitioner had completed the presentation of her evidence, the respondent moved for judgment in his favor which motion was granted by the trial court and the citation petition was dismissed with prejudice.

The citation proceeding sought to recover the proceeds of three certificates of deposit issued by the People's State Bank of Manito. The certificates were dated September 5, 1973, May 11, 1974, and February 4, 1975, in the amounts respectively of $4,700, $2,000 and $4,000. The certificates were made payable to James Vale or Nelson Lawson as joint tenants with rights of survivorship. The certificates also included a notation placed on them by the bank "as JT TEN WROS." Lawson, who was Vale's nephew, resided in the same general area as Vale. The certificates were renewals or reissues of certificates previously issued to Vale and Lawson. The payments or deposits for the certificates were made by Vale. No signature cards or agreements were signed by ei'.ier of the payees at the times the certificates were issued. It was the business custom of the bank not to require the execution of signature cards or other written agreement with respect to this type of account.

During the early part of April 1976, Vale suffered a cerebral stroke which affected the use of his left arm and leg and to some extent his speech. His mental processes were unaffected. Vale was hospitalized in Pekin for about a week and then transferred to a nursing home. During

this period of his illness, his affairs were handled by Lawson. Florence Lindsey, Vale's sister, communicated the details of his illness to his only child, Barbara Cowan, who resided in Greeley, Colorado. His daughter had seen her father only once in the last 10 years. She came to Pekin about the middle of April to visit her father. Some kind of argument developed between Cowan and Lawson concerning money matters which upset Vale and resulted in his daughter returning to Colorado. In response to phone calls from her father she returned to Pekin on May 3, 1976. On the following morning with Lawson and Cowan present at the nursing home, Vale signed a power of attorney, which had previously been typed, appointing his daughter as his attorney in fact to take care of his personal matters. On this occasion Vale asked Lawson to turn over the time certificates to his daughter which Lawson indicated he would do. However, rather than doing so, Lawson later on the same day went to the bank, presented the certificates for payment and then transferred the proceeds of the certificates to another account in the bank in his name alone. On the following day, May 5, 1976, Barbara Cowan learning of the transfer, requested Lawson to turn such funds over to her which Lawson declined to do.

On May 18, 1976, James Vale died intestate. His administratrix commenced the citation proceeding to recover the proceeds of the certificates of deposit. Although the judgment order did not contain any findings of fact, respondent's motion to dismiss the petition at the close of the petitioner's case was based on his claim that he owned the property as the result of an executed inter vivos gift and the evidence was insufficient to warrant any contrary conclusion.

In seeking to reverse the judgment of the trial court the petitioner argues the court erred in holding the issuance of the certificates of deposit in the names of Vale and Lawson as joint tenants with right of survivorship, constituted an executed inter vivos gift. The petitioner insists Lawson was a fiduciary and the certificates of deposit were issued without any donative intent.

With respect to petitioner's assertion the evidence shows a fiduciary relationship existing between Vale and Lawson or that Lawson was Vale's agent, we believe it is sufficient to say that the assertion is not supported by any evidence. (See *In re Estate of Nelson*, 132 Ill. App. 2d 544, 270 N.E.2d 65.) There is no evidence from which it may be inferred a fiduciary relationship existed between Vale and Lawson at the times Lawson's interests in the certificates of deposit arose. Nor is there any evidence that Lawson's interests arose in any representative capacity.

■■ Where a joint tenancy account with right of survivorship has been created a presumption arises a gift is intended. (*In re Estate of Pokorney*, 99 Ill. App. 2d 230, 240 N.E.2d 740.) Such a presumption is rebuttable, but

clear and convincing evidence that no donative intent existed at the time is required. To support her claim that the certificates of deposit were not issued with any donative intent, the petitioner asserts that the issuance to both parties was a mere matter of convenience. Again we note that this is an assertion without evidentiary support. There is nothing in the evidence regarding the circumstances surrounding the issuance of the certificates indicating anything other than that the decedent intended to make a gift at the time. To rebut the presumption of gift, the evidence supporting such rebuttal must relate to the time the joint tenancies were created. (*In re Estate of Marx*, 11 Ill. App. 3d 727, 297 N.E.2d 637; *In re Estate of Fidler*, 23 Ill. App. 3d 1046, 319 N.E.2d 822.) So far as the evidence in the record bears on Vale's intent at the time the certificates were issued, it supports the claim that a gift was intended. The president of the bank testified he was well acquainted with both Vale and Lawson and at the time the certificates were issued, Vale indicated affirmatively he wanted Lawson to be a joint owner of the certificates with him.

■■ That a donor may have later changed his mind by then desiring to revoke a gift does not revoke the presumption of donative intent with respect to the transaction at its inception since it does not relate to the donor's intent at the time of the creation of the joint tenancies. (*In re Estate of Fidler*, 23 Ill. App. 3d 1046, 319 N.E.2d 822.) The mere fact that a donor may have changed his mind is insufficient as a matter of law to sever the joint tenancy. *In re Estate of Marx*, 11 Ill. App. 3d 727, 297 N.E.2d 637; *In re Estate of Zengerle*, 2 Ill. App. 3d 98, 276 N.E.2d 128.

■■■ Finally, petitioner argues that section 2(b), (c) of "An Act to revise the law in relation to joint rights and obligations" (Ill. Rev. Stat. 1975, ch. 76, par. 2(b), (c)) requires a holding that as a matter of law joint tenancies with rights of survivorship were not created in the certificates of deposit because of the absence of any signed agreement. Even though *In re Estate of Baxter*, 56 Ill. 2d 223, 306 N.E.2d 304 and *In re Estate of White*, 56 Ill. 2d 265, 307 N.E.2d 122, were concerned primarily with subsection (b) of the foregoing statute, the opinions discuss at length the creation and attributes of joint tenancies with rights of survivorship in certificates of deposit and other instruments. We believe the foregoing cases are ample authority for our holding that no written agreement signed by the payees is necessary to create a valid joint tenancy survivorship interest in a certificate of deposit.

For the foregoing reasons the judgment of the circuit court of Tazewell County is affirmed.

Judgment affirmed.

STENGEL, P. J., and BARRY, J., concur.