*In re* ESTATE OF DENA HARMS, Deceased (Duane Harms *et al.*, Petition-ers-Appellees and Cross-Appellants, v. Ermyle Walters *et al.*, Respondents-Appellants and Cross-Appellees).

Fourth District   No. 4—91—0778

Opinion filed September 30, 1992.—Modified on denial of rehearing November 17, 1992.

W. Loren Thomson, of Bloomington, for appellants.

James W. Yoder, of Bloomington, for appellees.

JUSTICE COOK delivered the opinion of the court:

Petitioners filed a citation proceeding on behalf of their grandmother's estate seeking a determination of right and title to various savings bonds, bank accounts, and certificates of deposit (CDs) held in the name of decedent and one or both of her two daughters as joint tenants. The order entered in the estate proceeding directed respondents to pay over to the estate more than $128,000, representing income received and deposited into preexisting joint tenancy accounts for the three years preceding decedent's death. Respondents appeal, alleging (1) the trial court improperly ruled that income generated subsequent to decedent's stroke, although deposited in joint tenancy accounts, was payable to the estate; and (2) the court improperly relied on an expert witness it appointed to compute sums accruing subsequent to decedent's stroke. Petitioners cross-appeal, alleging (1) both principal and income from all joint tenancy accounts are properly payable to the estate, as the accounts were established without donative intent and for convenience only; and (2) certain of the accounts failed to comply with the statutory requirements for creating a joint tenancy with a right of survivorship.

Dena A. Harms (decedent) was the widow of Henry Harms, who died in 1960. She had three children, her daughters Ermyle Walters and Lucille Gunther, respondents herein, and a son, Arthur Harms, who died in 1979. Petitioners are the adult children of Arthur Harms. Decedent apparently lived alone until March 20, 1984, when she suffered a stroke. She was taken to the hospital and transferred shortly thereafter to the Lida Nursing Home, where she remained until her death on April 12, 1987, at the age of 93. She left a will and two codicils, several parcels of farmland and numerous CDs, bank accounts, and treasury bonds.

Petitioners' citation petition sought recovery of the joint tenancy property on the theory that respondent, Ermyle Walters, "acted as an agent for the decedent and conducted and managed her banking and business transactions."

Evidence was presented showing that after the death of her husband and prior to the death of her son, decedent embarked on a course of creating joint tenancies in her bank accounts and CDs. Initially all three of her then living children were named as joint tenants, but when Arthur died in December 1979 his name was taken off the existing accounts. Additional accounts were created over time from funds contributed wholly by decedent with respondents named as joint tenants.

Following the death of her husband Henry in 1960, decedent took possession of certain United States Treasury E bonds which named only Arthur and Henry Harms as joint tenants. Decedent placed these bonds in her safe deposit box because she did not feel her children should receive any funds until after her death. She also executed a first codicil to her will, which expressed an intent to equalize the disparity between distributions received (or to be received) by each of her children from Henry's estate. After Arthur's death in 1979, decedent's attorney explained to her that since both her husband and son were deceased, the bonds were the property of Arthur's estate and had to be turned over. He explained to her the effects of joint tenancy ownership with rights of survivorship but decedent was unhappy the money was to be paid over to her son's estate prior to her death.

At the hearing, Ermyle Walters testified that she had worked at Minonk State Bank (Minonk) for 18 years. During that time she had taken decedent to the bank to handle her banking affairs and had occasionally assisted decedent by making deposits, transferring funds or cashing checks on joint accounts at her mother's request. She also advised her mother on interest rates available for CDs.

Subsequent to decedent's stroke on March 20, 1984, Walters became more active in assisting decedent in her banking affairs by making deposits, writing checks, and rolling over CDs as they matured. Pursuant to decedent's request, her attorney went to the Lida Nursing Home to see decedent in February 1985. Decedent requested that he prepare for her signature a power of attorney appointing Walters as her attorney in fact. This document was executed by decedent on February 12, 1985.

Following execution of the power of attorney, Walters continued to make deposits of income into joint tenancy accounts created prior to decedent's stroke. Sources of the income included interest from the joint CDs, income tax refunds, proceeds from the sale of stock held by decedent individually, and farm income. Walters paid decedent's expenses from the joint checking account and transferred funds from other joint accounts into checking to cover current expenses. None of the documents of record indicate that decedent maintained any bank accounts solely in her own name.

In March 1986, Walters withdrew $20,000 for emergency expenses from one of the joint tenancy accounts in response to a crisis in her mother's health. When the crisis passed, the money was redeposited. In September 1986, respondents together withdrew $29,000 for their own use. According to Walters, this withdrawal was at decedent's direction.

On March 28, 1990, the court entered an order finding as follows: (1) decedent was not incompetent following her stroke; (2) a confidential relationship existed between decedent and Walters from the date following the stroke until the execution of the power of attorney on February 21, 1985, and thereafter a fiduciary relationship existed; (3) Walters took action to benefit herself and the other joint tenant to the detriment of the estate; and (4) it was the intent of the decedent that only the amounts at the date of her stroke on March 20, 1984, were to become the property of the survivors. The court then concluded (1) decedent "intended to establish an unequal division of her estate between the various 'branches' of the family" and set up the joint accounts "with full understanding of the legal consequences"; (2) there was "no evidence that Ermyle Walters or Lucille Gunther claimed any of the joint property income as theirs during the lifetime of Dena Harms and thus her general estate bore this obligation"; (3) "[a]ny decision by a joint owner to create new joint property with the income or to increase the value of existing joint property with income if that person holds a confidential or fiduciary relationship at the time is presumptively invalid"; and (4) "the assets held jointly on the date of

death pass to the person shown to be the joint owner on that date to the extent of the asset's principal value on March 20, 1984." The court then ordered the parties to make computations consistent with the order and, if they could not agree, an accountant was to be appointed by the court.

Both parties hired accountants and their reports did not agree. The court appointed a certified public accountant (CPA) who filed a report on June 14, 1991. That report indicated that $87,573.76 was not traceable to principal balances existing on March 20, 1984. Interest computed at the prime rate brought the total amount due the estate to $128,506.58 as of June 10, 1991.

■ For simplicity of discussion, we address first petitioners' cross-appeal contending that the joint accounts were established for convenience only and all sums are property of the estate. At the creation of a statutory joint tenancy, a presumption of donative intent arises and a party claiming adversely to the instrument creating the joint account has the burden of proving by clear and convincing evidence that a gift was not intended. *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 589, 202 N.E.2d 470, 471-72; *In re Estate of Lewis* (1990), 193 Ill. App. 3d 316, 319, 549 N.E.2d 960, 962.

Petitioners speculate that since the pattern of creating joint tenancies was begun in the years prior to the death of decedent's son in 1979 and the three children would take the funds in the same percentage they otherwise would under the terms of the will, the names must have been included only for convenience. Petitioners claim the accounts retained this "convenience" status following the death of decedent's son Arthur since the two daughters would "logically" take care of their mother's personal needs.

■ A "convenience account" is an account, apparently held in some form of joint tenancy, where in fact the creator did not intend the other tenant to have any interest, present or future, but had some other intent in creating the account. An example of a convenience account is an account where the creator only wanted the other tenant to write checks at the creator's direction, and not to have any share in the account during the creator's life or on the creator's death.

■ A joint account is often used as a form of testamentary disposition, a will substitute, where the creator does not intend the other tenant to have any present interest, but does intend the other tenant to have the account on the creator's death. Such an account is a true joint tenancy account with the right of survivorship, whether or not the other tenant claimed any interest in the account during the crea-

tor's life. A joint account created as an alternate form of testamentary disposition is not a convenience account, at least not as far as the right of survivorship is concerned. It is illogical that an individual would place all of her substantial assets in joint accounts if she just wanted someone to relieve her of the day-to-day burden of writing checks. Petitioners do not suggest what "convenience" the creator would have intended in setting up any of these accounts, or why she would intend, contrary to the form of the accounts, that they not carry with them a right of survivorship. A lack of knowledge as to the purpose for creation of a survivorship account is insufficient as a matter of law to overcome the presumption of donative intent. (See *In re Estate of Gibbons* (1978), 65 Ill. App. 3d 314, 316, 382 N.E.2d 585, 587.) Moreover, the record reveals direct evidence supporting the presumption of donative intent. The terms of the first codicil to the will, dated January 15, 1975, indicate that decedent intended to monetarily benefit respondents from her personal estate in order to "equalize" sums received by her son from her husband's estate. During the three years decedent resided at the nursing home, all the family members visited her from time to time, but Ermyle Walters went to see her every day, bringing her the mail and reading the newspaper to her. It is not unreasonable to conclude decedent intended to favor her daughters over her grandchildren.

The trial court found decedent

> "understood the effect and consequences of the creation of joint accounts/ownership including the rights of survivorship.
>
> *** [And] took actions in the creation of joint ownership of certain assets which were inconsistent with occasional statements and actions regarding her estate plan."

Based on this finding, the trial court determined that as to account balances existing at March 20, 1984, or traceable to accounts in existence on that date, respondents acquired sole title by right of survivorship.

Petitioners cite authority wherein the surviving joint tenant was found not to have exercised authority over the account inconsistent with decedent's ownership and there was evidence the decedent did not intend to make a gift of any interest in the account (see *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 555, 388 N.E.2d 431, 433-34; *In re Estate of Abbot* (1987), 157 Ill. App. 3d 289, 293, 510 N.E.2d 619, 622; *In re Estate of Schroeder* (1979), 74 Ill. App. 3d 690, 694-95, 393 N.E.2d 1128, 1131-32 (decedent wanted someone to help manage her affairs while she was hospitalized); *In re Estate of Friedman* (1984), 123 Ill. App. 3d 82, 86-87, 462 N.E.2d 692, 695 (decedent es-

tablished joint accounts after hospitalization, to assist in handling of her financial affairs)). In all of these cases, the evidence was found sufficient to rebut the presumption of donative intent. Due to a lack of any articulable facts showing decedent here established the joint tenancies merely for convenience, we cannot say the trial court's conclusion that account balances existing on March 20, 1984, or traceable to accounts in existence at that time, are the property of respondents through operation of law is against the manifest weight of the evidence. See *In re Estate of Lewis* (1990), 193 Ill. App. 3d 316, 320, 549 N.E.2d 960, 962.

■ Petitioners argue that certain of the accounts do not meet the statutory requirements necessary to create a survivorship account. Section 2(a) of "An Act to revise the law in relation to joint rights and obligations" (Act) provides that when a deposit in a bank or trust company shall "be made in the names of two or more persons payable to them when the account is opened or thereafter" the deposit may be paid to any one of said persons whether the other be living or not. (Ill. Rev. Stat. 1989, ch. 76, par. 2(a).) Despite the argument that section 2(a) of the Act was intended as a bank protection statute, the section has been read to provide a statutory method by which a right of survivorship could be created as between the parties themselves. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 66-67, 185 N.E.2d 850, 853; *Murgic*, 31 Ill. 2d at 589, 202 N.E.2d at 471-72.) "Public policy would seem to require the adoption by the courts of a more liberal and practical view of these common transactions." (*Frey*, 26 Ill. 2d at 66, 185 N.E.2d at 853.) It is possible to read section 2(a) of the Act to authorize creation of a statutory survivorship account without the execution of a signed agreement, but an earlier case had required the signature of the parties, and *Frey* refused to disturb that decision. (*Frey*, 26 Ill. 2d at 67-68, 185 N.E.2d at 854, citing *Doubler v. Doubler* (1952), 412 Ill. 597, 107 N.E.2d 789.) Another statute, with more extensive requirements, applies to the creation of statutory survivorship accounts in savings and loan institutions (Ill. Rev. Stat. 1989, ch. 17, par. 3304—8(a)), but that statute does not apply to this case, which involves bank accounts.

The checking account, No. 20—064—3, was opened January 10, 1983, in the names "Dena A. Harms or Lucille Gunther and Ermyle Walters," with only one signature required for withdrawal. All three signatures appear on the account agreement. A number of blocks appear under the heading "Type of Account—Personal," including "Individual," and "Joint—With Survivorship." Other blocks appear under the heading "Type of Account—Business." None of the blocks was

checked. The agreement provides that "[a]ny one of the persons who signs this agreement may withdraw all or any portion of the account balance." The money market account, No. 70–199–0, is similar. There, a choice could be made between "Personal Account" and "Commercial Account," and the personal account block was checked. Again the agreement provided that "[u]nless clearly indicated to the contrary, any one of you who signs *** may withdraw or transfer all or any part of the account balance at any time [subject to limitations not relevant here]." Both accounts accordingly complied with section 2(a) of the Act, as they were bank accounts, made in the names of two or more persons, and payable to any of them when the account was opened or thereafter. The accounts were also created pursuant to an agreement signed by all the parties at the time the account was opened. The trial court did not err in finding that both these accounts were statutory survivorship accounts under section 2(a) of the Act. It is not necessary for us to consider what the result might be if a block inconsistent with a right of survivorship had been checked.

Petitioners argue a contrary result is required by *O'Vadka v. Rend Lake Bank* (1990), 203 Ill. App. 3d 1007, 561 N.E.2d 360, apparently involving a checking account or savings account employing a signature card similar to those in this case. There was a question in *O'Vadka* whether the joint account with survivorship block had been checked, and the court deemed *Murgic* (and thereby *Frey*) inapplicable on the issue whether a statutory survivorship account had been created.

> "The following conditions must be met in order to establish a joint tenancy with right of survivorship as personal property, and, except as the statute makes specific provisions governing certain other cases, the requirements are the same whether the property in question is located in a safety deposit box or elsewhere: (1) such an interest can be created only by means of a written instrument; (2) the instrument must express an intention to create a joint tenancy in personal property and apparently must expressly provide that the property so held is to be subject to the right of survivorship between the owners thereof; and (3) the instrument should comply with the general requirements of a will as to definitions of description of subject matter, parties, and certainty of its object." (*O'Vadka*, 203 Ill. App. 3d at 1014-15, 561 N.E.2d at 365.)

*O'Vadka* relied for these requirements on *David v. Ridgely-Farmers Safe Deposit Co.* (1950), 342 Ill. App. 96, 95 N.E.2d 725, a decision which preceded *Frey* by 12 years. *David* involved a safe deposit box,

not a savings or checking account, and the requirements discussed by the court were those under the introductory language of section 2, not section 2(a) of the Act. In *David* the court required that the amount of money involved be specified in the agreement, and held among other things that the statute is only a bank protection statute, that the statute does not provide a simplified method for the creation of a joint tenancy with right of survivorship, that the existence of the traditional four unities of title is essential to the creation of a joint tenancy, and that the right of survivorship must specifically be mentioned. To the extent *David* has any relevance in a case involving savings accounts or checking accounts, *David* is clearly not good law after *Frey*. Further, *O'Vadka* only reversed the granting of summary judgment, while in this case we affirm a decision after trial.

We further disagree with the implication in *O'Vadka* that *Murgic* and *Frey* have nothing to say on the creation of a statutory right of survivorship. *Frey* followed earlier cases which construed the statute to have "provided a statutory method by which a right of survivorship could be created as between the parties themselves" (*Frey*, 26 Ill. 2d at 67, 185 N.E.2d at 853), something which *David* refused to do with the introductory language of section 2 which applied to safe deposit boxes. (*David*, 342 Ill. App. at 109-10, 95 N.E.2d at 732.) Compliance with section 2(a) of the Act may lead to a finding of a right of survivorship in most cases where accounts are held in two names, unless there is a clear indication to the contrary, but we see that result as superior to a rule where the result would depend on the form the bank happened to be using at the moment, or the advice given the parties by a bank employee. In this case the cashier at Minonk testified the employees of the bank did not pay much attention to the different forms they used, but simply inserted the word "or" between the account holder names when a joint tenancy with right of survivorship was intended. *Cf. Frey*, 26 Ill. 2d at 74-75, 185 N.E.2d at 857 (use of word "or" does not indicate an intention to create a right of survivorship, and is insufficient where there is no deposit agreement).

▪ Petitioners also argue that Minonk and the Farmers State Bank did not require signature cards for some CDs, and therefore those CDs could not give rise to a right of survivorship. Even assuming no signature cards were required, no signed agreement is necessary for the creation of a right of survivorship in a CD. CDs are not bank accounts under section 2(a), but "other evidences of indebtedness or of interest" (like stocks and bonds) under section 2(b) of the Act (Ill. Rev. Stat. 1989, ch. 76, par. 2(b)), which do not require any signed agreement. *In re Estate of Baxter* (1973), 56 Ill. 2d 223, 225-

26, 306 N.E.2d 304, 306; *In re Estate of Vale* (1977), 55 Ill. App. 3d 712, 715, 371 N.E.2d 198, 200-01.

■■ We turn now to the issues raised in the original appeal. The trial court determined that a confidential or fiduciary relationship existed between Ermyle Walters and decedent from March 20, 1984, the date of decedent's stroke. Based on that relationship, the court found that Walters "took action regarding the joint ownership assets which served to benefit herself and the other joint owner to the detriment of the individual estate of the decedent." This finding was apparently predicated upon evidence showing income earned by decedent or interest earned by virtue of the joint accounts was deposited by Walters into existing joint bank accounts, rather than (as suggested by petitioners) a trustee account. In determining these sums were property of the estate, the court then concluded: "Any decision by a joint owner to create new joint property with the income or to increase the value of existing joint property with income if that person holds a confidential or fiduciary relationship at the time is presumptively invalid," citing *In re Estate of Wernick* (1986), 151 Ill. App. 3d 234, 502 N.E.2d 1146, *modified on other grounds* (1989), 127 Ill. 2d 61, 535 N.E.2d 876, and *Crawford v. Krebs* (1976), 40 Ill. App. 3d 568, 352 N.E.2d 76. However, we find both of those cases inapposite. Each involved a transfer of real property and money procured by fraud and undue influence on the part of the fiduciary. In neither case was the presumption of donative intent attaching to joint tenancy bank accounts at issue and neither case is dispositive of the issues herein.

As respondents do not contest the court's finding that a fiduciary relationship existed between decedent and Walters as of March 20, 1984, we are confronted with the application of conflicting presumptions to the facts of this case. On the one hand, presumption of fraud attaches to gifts made to one who stands as a fiduciary to the donor. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 464, 448 N.E.2d 872, 877-78; *In re Estate of Martin* (1990), 201 Ill. App. 3d 1061, 1064, 559 N.E.2d 1112, 1114.) In contrast, a presumption of donative intent attendant to survivorship joint tenancies is conclusive unless clear and convincing evidence of a lack of donative intent is shown. Several cases have held that the burden of proof as to donative intent is not reversed based on the existence of a fiduciary relationship, absent evidence that the fiduciary relationship was abused. (See *In re Estate of Foster* (1969), 104 Ill. App. 2d 447, 453-54, 244 N.E.2d 620, 623-24; *In re Estate of Copp* (1971), 132 Ill. App. 2d 974, 980, 271 N.E.2d 1, 5; *In re Estate of Wilkening* (1982), 109 Ill. App. 3d 934, 939-40, 441 N.E.2d 158, 162.) Our view with regard

to the application of conflicting presumptions is that they perform a dual role. The presumptions first establish each of the parties' *prima facie* obligation and second negate the necessity for conclusive rebuttal evidence, leaving the trial court free to make a determination based on the facts and credibility of witnesses. (See *In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 772-73, 467 N.E.2d 962, 966; *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 216, 446 N.E.2d 499, 502-03.) The conflicting presumptions cancel each other. Decisions made by the trial court under these circumstances will not be disturbed on review unless they are contrary to the manifest weight of the evidence.

In this instance, the court determined that essentially all additions to the joint accounts following decedent's stroke on March 30, 1984, less expenses incurred by decedent were properly payable to the estate, including the $29,000 withdrawn by respondents in 1986 for their own use. We have determined that the right to the joint tenancy accounts devolved to respondents by operation of law. Based on the facts of this case and a lack of evidence of any manipulation of decedent's assets by Ermyle Walters, even if the $29,000 was improperly withdrawn, respondents would have taken same on decedent's death by virtue of their right of survivorship. Therefore, we need not comment on the propriety of this withdrawal.

Apparently the court's finding that Ermyle Walters acted "to benefit herself and the other joint owner to the detriment of the individual estate of the decedent" was based on deposits of subsequently earned income into joint accounts. However, our review of the record fails to reveal any manipulation by Walters or deviation in the handling of the joint accounts from the custom and practice of decedent during the period prior to her stroke. Indeed, interest income accruing by virtue of the joint accounts would have been automatically credited by the banking institutions without any action by Walters at all. While Walters shifted funds from one joint account into newly created CDs, the accounts from which funds were transferred were joint accounts created prior to decedent's stroke. There is no evidence decedent maintained any individual bank accounts. Under such circumstances, Walters was entitled to handle the accounts as her mother had in the past and there is no showing Walters did anything unusual. Therefore, periodic deposits of interest income into the joint accounts following March 20, 1984, cannot be characterized as a diversion of assets belonging to the estate.

Nevertheless, petitioners argue, and respondents concede, that income generated by individual assets or proceeds from converted assets were improperly deposited in joint accounts and are properly pay-

able to the estate. Sources of funds originally standing in decedent's name only include income tax refunds, farm income from the sale of grain, dividends from and proceeds of the sale of stock, and other payments to decedent derived from sources other than the joint tenancy bank accounts. From our review of the record, however, it appears funds from individual assets were properly applied to decedent's debts and no sums belonging to the estate remained in the joint accounts.

The order finding $128,506.58 payable to the estate representing income accruing after March 20, 1984, and interest thereon to June 10, 1991, is against the manifest weight of the evidence and must be reversed. While it appears that income generated by individual assets of decedent and accruing after March 20, 1984, has been entirely subsumed by payment of decedent's debts, we conclude better practice dictates this aspect of the case should be remanded with directions the trial court determine whether individual income exceeded expenses for the period March 20, 1984, to the date of death. To this end the court may take further evidence if it deems it necessary or appropriate.

Due to our resolution of the foregoing issues, we deem it unnecessary to reach the issue raised by respondents as to the court's allegedly improper reliance on the CPA it appointed.

Affirmed in part; reversed in part and remanded with directions.

GREEN, P.J., and STEIGMANN, J., concur.