MERLE DRENCKPOHL *et al.*, Plaintiffs-Appellants, v. BILL BARKER *et al.*, Defendants-Appellees.

Fifth District   No. 5—91—0748

Opinion filed March 12, 1993.

Lackey & Lackey, P.C., of Centralia, for appellants.

Curtis L. Blood, of Collinsville, for appellee Farmers State Bank of Hoffman.

No brief filed for appellees Bill Barker and Norma Barker.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

Merle and Wendell Drenckpohl appeal from the decision of the trial court entering summary judgment in favor of Farmers State Bank and from the trial court's order dismissing plaintiffs' complaint against Bill and Norma Barker. We affirm.

The controversy in this case centers around three certificates of deposit issued by Farmers State Bank of Hoffman (State Bank) on June 15, 1988. The certificates of deposit are virtually identical to one another. It is undisputed that each of the certificates of deposit states that it is nonnegotiable and nontransferable. Each was issued in the names of "Velma E. Drenckpohl or Merle Drenckpohl or Wendell Drenckpohl" and payable to "either of them as joint tenants with right of survivorship and not as tenants in common." Each was for the principal amount of $6,300, with interest payable at 7.5%, with a maturity date of December 15, 1990. All three certificates of deposit are signed "Velma E. Drenckpohl." It is undisputed that the plaintiffs neither provided any of the funds for the purchase of the certificates of deposit nor physically possessed the instruments. Furthermore, no signature-card agreement or any other agreement bearing the signature of either Merle Drenckpohl or Wendell Drenckpohl was ever entered into between Velma Drenckpohl and State Bank, nor was any such agreement bearing the signature of either Merle or Wendell ever presented to State Bank.

On October 13, 1988, State Bank, at the request of Velma Drenckpohl, crossed out the names of Wendell and Merle Drenckpohl on each certificate of deposit and inserted the names of Bill and Norma Barker. The affidavit of Shelia Wooters, an employee of State Bank, provided that at the request of Velma Drenckpohl she deleted the names of Merle and Wendell Drenckpohl and added the names of Bill and Norma Barker. Wooters testified that she wrote "October 13, 1988," on the certificates, affixed her initials to each, and had Velma Drenckpohl affix her initials to each certificate. Mary Ann Leutner, head of the time-certificate department at State Bank, provided an affidavit which stated that on October 13, 1988, she entered the changes made by Shelia Wooters into the register.

Velma Drenckpohl died on March 16, 1989. By letter dated March 20, 1989, the plaintiffs notified State Bank of their claim of ownership to the certificates of deposit. However, when the Barkers subsequently presented the certificates of deposit for payment, State Bank paid the Barkers the amounts due thereon and cancelled the certifi-

cates. Merle and Wendell Drenckpohl filed suit against State Bank and the Barkers alleging that the defendants had converted the certificates of deposit. The trial court dismissed plaintiffs' complaint against the Barkers for failure to state a cause of action. The Drenckpohls and State Bank filed cross-motions for summary judgment, and on July 30, 1991, the trial court granted State Bank's motion for summary judgment and denied the Drenckpohls' motion.

Plaintiffs argue that the trial court's decision was premised upon the mistaken conclusion that the plaintiffs never acquired an interest in the certificates of deposit. Plaintiffs contend that when Velma had the certificates issued with their names on them she made a gift to Merle and Wendell. State Bank counters that the plaintiffs never acquired an ownership interest in the certificates of deposit and that the trial court was correct in its decision.

The first question we need to address is whether a valid joint tenancy was created when the certificates of deposit were issued with the names "Velma Drenckpohl or Merle Drenckpohl or Wendell Drenckpohl" on them.

■ The estate of joint tenancy comes to us from the early English law, and the rules applicable to it have been modified by statute in Illinois. (*Jackson v. O'Connell* (1961), 23 Ill. 2d 52, 55, 177 N.E.2d 194, 195.) In particular, section 2 of the Joint Tenancy Act provides:

> "*Except* as to executors and trustees, and except also *where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished,* and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common. However, the foregoing shall not be deemed to impair or affect the rights, privileges and immunities set forth in the following paragraphs (a), (b), (c), (d) and (e):
>
> (a) When a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of 2 or more persons payable to them when the account is opened or thereafter, the deposit or any part thereof or any interest or dividend thereon may be paid to any one of those persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all those persons at the time the account is opened or thereafter the receipt or acquittance of the person

so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made.

(b) *When shares of stock, bonds or other evidences of indebtedness or of interest are or have been issued or registered by any corporation, association or other entity in the names of 2 or more persons as joint tenants with the right of survivorship, the* corporation, association or other *entity* and their respective transfer agents *may, upon the death of any one of the registered owners, transfer those shares of stock, bonds, or other evidences of indebtedness or of interest to or upon the order of the survivor or survivors of the registered owners,* without inquiry into the existence, validity or effect of any will or other instrument in writing or the right of the survivor or survivors to receive the property, and without liability to any other person who might claim an interest in or a right to receive all or a portion of the property so transferred." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 76, par. 2.)

Subsection (b) does not require an agreement to be signed to create a joint tenancy in shares of stock, bonds or "other evidences of indebtedness or of interest" when shares of stock or "other evidences of indebtedness or of interest" have been issued in the names of two or more persons as joint tenants with the right of survivorship, and it further provides for the payment of such interest to the survivor or survivors without liability to any other person. The supreme court has held that a certificate of deposit is "other evidence of indebtedness or of interest" so as to fall under subsection (b). (*In re Estate of White* (1974), 56 Ill. 2d 265, 307 N.E.2d 122; *In re Estate of Baxter* (1973), 56 Ill. 2d 223, 306 N.E.2d 304.) Thus, in the case at bar the certificates of deposit are "other instruments in writing" which not only express an intention to create a joint tenancy in personal property but did in fact create a joint tenancy with right of survivorship as between the joint tenants named therein. See *Estate of Baxter*, 56 Ill. 2d at 226, 306 N.E.2d at 307.

As stated in *Estate of White*, "[the] certificate of deposit [is] *** unlike the fluctuating *res* in an ordinary bank account, and any unstable atmosphere which, from a policy viewpoint, might call for the joint owners to contract, detailing their rights and obligations under the statute with reference to an ordinary bank account, [does] not exist with reference to [a] certificate." (*Estate of White*, 56 Ill. 2d at 270, 307 N.E.2d at 125.) A certificate of deposit is an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to pay the sum of

money. (Ill. Rev. Stat. 1991, ch. 26, par. 3—104(j).) It is a time deposit payable to the account owners upon the expiration of a fixed period of time. (*In re Estate of Szorek* (1990), 194 Ill. App. 3d 750, 757, 551 N.E.2d 697, 701.) The certificate of deposit is not a deposit within the purview of subsection (a) of section 2 of the Act but rather falls within the introductory paragraph and subsection (b) as "other evidences of indebtedness or interest" not requiring an agreement to be signed by all parties to create a joint tenancy.

■ Where a joint tenancy account with right of survivorship is created, a rebuttable presumption arises that a gift is intended. (*In re Estate of Vale* (1977), 55 Ill. App. 3d 712, 714, 371 N.E.2d 198, 200.) To rebut the presumption of a gift, clear and convincing evidence that no donative intent existed at the time the joint tenancies were created is required. (*Estate of Vale*, 55 Ill. App. 3d at 715, 371 N.E.2d at 200.)

> "[A]n instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement." *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 591, 202 N.E.2d 470, 472.

■ State Bank raised several points before the trial court to demonstrate that Velma Drenckpohl did not intend a gift but intended to retain control over the money. State Bank argued that no signature-card or other agreement bearing the signature of the plaintiffs was ever entered into between Velma Drenckpohl and State Bank. As determined above, the certificates of deposit were "other evidences of indebtedness or interest" under the Joint Tenancy Act and, therefore, a separate writing was not necessary to create a joint tenancy. Therefore, the absence of a separate agreement was not enough to overcome the presumption of a gift.

State Bank also asserted that it is clear Velma Drenckpohl intended to retain control over her money because she contributed all of the funds to obtain the certificates of deposit. Even if we assume the money was hers, simply because she obtained the certificates of deposit without the assistance of the plaintiffs is not sufficient to overcome the presumption that a gift was intended. (See *In re Estate of Eiberger* (1978), 60 Ill. App. 3d 790, 376 N.E.2d 793.) Parenthetically, we note that just because the joint tenants may not have contributed equal amounts to the creation of the joint tenancy does not mean a

joint tenancy was not created. The unity of interest required for the creation of a joint tenancy refers to equality among the cotenants only as to their interest in the estate. *Jackson v. O'Connell* (1961), 23 Ill. 2d 52, 58, 177 N.E.2d 194, 196-97; *Paluszek v. Wohlrab* (1953), 1 Ill. 2d 363, 365, 115 N.E.2d 764, 766.

State Bank further argued that neither plaintiff claims to have physically possessed the certificates of deposit. Someone had to maintain possession of the instruments. Each joint tenant has an equal right to possession of the evidence of title, and since they cannot all have manual possession at the same time, possession by one is possession for the benefit of all. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) We cannot conclude that Velma Drenckpohl's retention of possession of the certificates of deposit established her lack of donative intent. State Bank argued that Velma Drenckpohl's instructions to delete the names of Merle and Wendell and insert the Barkers in their place evidences her intent to retain control over the property. While the evidence shows that she changed the names on the certificates of deposit, the evidence of lack of donative intent must relate back to the time of the creation of the joint tenancies. The evidence must clearly and convincingly show that there was a lack of donative intent at that time. (*In re Estate of Eiberger* (1978), 60 Ill. App. 3d 790, 794, 376 N.E.2d 793, 796.) The mere fact that a donor may have changed her mind is insufficient as a matter of law to sever the joint tenancy. *In re Estate of Vale* (1977), 55 Ill. App. 3d 712, 371 N.E.2d 198.

Having determined that a valid joint tenancy with right of survivorship was created and that a gift was made to the plaintiffs at the time Velma Drenckpohl had the certificates of deposit issued, we turn to the issue of whether Velma Drenckpohl had the right to alter the certificates of deposit and what effect, if any, the alteration had on the plaintiffs' interest in them.

The following is printed on the back of each of the certificates of deposit:

> "JOINT CERTIFICATES *When two or more persons are named as depositors* on this Certificate *with the conjunction 'or' appearing between names, then such Certificate shall be payable to any of the survivor* or survivors *of them and payment may be made upon surrender of this Certificate to any of them* and payment may be made upon surrender of this Certificate to any of them *during the lifetime of all,* or to any survivor or survivors after the death of one or more of them. When the conjunction 'and' appears between names the Certificate

shall be payable only upon the signatures of all depositors named. Notice of amendment or repeal may be sent as hereinafter provided." (Emphasis added.)

Notations made on the back of a note contemporaneously with execution of the note, if made with the intention of making them part of the contract for payment of money, constitute as much a part of the note as though they were incorporated on its face. (*In re Estate of Feldman* (1944), 387 Ill. 568, 56 N.E.2d 405; *Van Zandt v. Hopkins* (1894), 151 Ill. 248, 37 N.E. 845.) The general rule is that an act or contract by one joint tenant respecting the joint property without the authority or consent of her cotenants cannot bind or prejudicially affect the latter's interest. If, however, the act of one joint tenant is beneficial to her cotenants, such act will be regarded as the act of all insofar as sharing in the benefit thereof is concerned. *In re Marriage of Nicks* (1979), 80 Ill. App. 3d 838, 839, 400 N.E.2d 431, 432; *Jeffers v. Brua* (1963), 40 Ill. App. 2d 156, 189 N.E.2d 374.

■ The provision on the back of the certificates of deposit was applicable to the joint tenants at the time the joint tenancy was created, and it permits any one of the joint tenants to receive payment on the instruments by surrendering them to State Bank. This provision conferred a benefit to each joint tenant as any of them could have received payment upon surrender of the certificates to State Bank.

According to the terms incorporated into the certificates of deposit, Velma Drenckpohl was permitted to invade the corpus of the certificates of deposit to the detriment of the other joint tenants. It is undisputed that she did so, and she deleted Merle and Wendell as joint tenants. Velma Drenckpohl was perfectly within her right as a joint tenant, under the terms of the certificates of deposit, to surrender the certificates of deposit for payment. While the less-confusing course of action may have been for State Bank to void the certificates of deposit and issue new ones with the Barkers as the new joint tenants, for whatever reason this was not done. This is of no matter, however, given Velma Drenckpohl's rights under the terms of the certificates of deposit.

Section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c)) provides that summary judgment shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The right of a moving party to obtain a summary judgment must be clear and free from doubt. (*Purtill v.*

*Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) In this case the facts admit of one conclusion. The trial court did not err in entering summary judgment in favor of State Bank and against the plaintiffs.

In light of our decision as to the grant of summary judgment, we also affirm the decision of the trial court dismissing plaintiffs' complaint against Bill and Norma Barker.

For the foregoing reasons, the judgment of the circuit court of Clinton County is affirmed.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.