(No. 32524.—

Leslie R. Stowell *et al.*, Appellees, *vs.* Myrtle Ann Satorius *et al.*, Appellants.

*Opinion filed Nov. 20, 1952—Rehearing denied January 19, 1953.*

EPLER C. MILLS, of Virginia, and GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (ALFRED F. NEWKIRK, and JAMES M. WINNING, of counsel,) for appellants.

C. G. COLBURN, of Virginia, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cass County whereby title to certain real estate was decreed to be held in trust for the appellees by the heirs of Myrtle Ann Satorius, one of the original defendants herein, for an accounting, for partition, appointing commissioners, and fixing costs.

The suit, instituted in November, 1945, was filed by five of the seven children of one Rockwell V. Stowell, and two children of a deceased daughter against Myrtle Ann Satorius, another daughter of Rockwell V. Stowell, and her husband, William H. Satorius.

During the course of the action Myrtle Ann Satorius died and her children were brought in as additional parties defendant.

The subject matter of the suit is 559 acres of farmland located in Cass County. In January of 1934 all of the children and heirs of Rockwell V. Stowell executed a quitclaim deed conveying this property to the defendant, Myrtle Ann Satorius. Subsequently, in June of 1934, a warranty deed was executed by all of the heirs of Rockwell V. Stowell, again conveying the property to Myrtle Ann Satorius. Thereafter, Myrtle Ann Satorius deeded the property to her husband, the defendant, William H. Satorius, who, in turn, quitclaimed the property to his children.

The complaint alleged that Rockwell V. Stowell died leaving the real estate by will to his seven children, each

of whom was to take a one-seventh interest therein. The property was to be sold at the end of a five-year period and the proceeds divided. The real estate was heavily mortgaged and the complaint alleged that the property was conveyed to the appellant, Myrtle Ann Satorius, to enable money to be raised to pay off the mortgage indebtedness and save the land for the heirs. The complaint states that the heirs agreed to convey their interest in the real estate to Myrtle Ann Satorius for the purpose of having her attempt to secure a loan to save the farm and that upon the completion of such a loan she agreed she would execute a declaration of trust to hold the real estate in trust for all of the heirs in the interests set up by the will of Rockwell V. Stowell.

The appellants filed answers denying the creation of the trust and claiming title to be in William H. Satorius.

The court referred the matter to the master in chancery. He, at the conclusion of somewhat lengthy hearings, made his report and findings in favor of the appellees, concluding that they were the rightful owners of the real estate along with the defendant, Myrtle Ann Satorius, and finding also that appellees were entitled to a decree of partition and accounting of the rents, issues and profits of the real estate from June 21, 1934. Objections were filed which were overruled by the master in chancery. The chancellor overruled all of the objections to the master's report in all respects and entered his decree declaring the existence of an express written trust.

The appellants argue that the complaint is based on the allegations of particular facts and these allegations had to be proved as alleged before the appellees were entitled to a decree. They claim that the evidence in the case fails to sustain the allegations of the complaint and that, therefore, the trial court was in error in entering a decree in favor of the appellees. They further state that any oral agreement by Myrtle Ann Satorius to take over and re-

finance the real estate, to hold it for five years and then sell it and account for the income and proceeds is unenforceable against the defense of the Statute of Frauds. They further state that there is no evidence to establish a trust agreement and that any evidence concerning the purported written trust agreement was beyond the scope of the pleadings and was not entitled to consideration by the court. They then state that, even should such proof be admissible, the law requires proof of a trust agreement, reportedly lost, to be so strong and convincing as to leave no reasonable doubt as to the existence of such an instrument and that such proof was lacking in this case. They state that the law, to establish the purported trust agreement, requires evidence which must be so clear and convincing and unequivocal and unmistakable as to lead to but one conclusion.

Perusing the record it is apparent that the one basic cleavage between the appellees and the appellants in this cause arises on the question of whether or not a written trust agreement was signed in June, 1934. The evidence discloses that Rockwell V. Stowell died testate on August 7, 1932, leaving surviving as his heirs-at-law his widow, Dora, six children and two grandchildren. The will was admitted to probate with one T. T. Lynn as administrator with will annexed. At the time of his death, R. V. Stowell was the owner of 559 acres of land in Cass County together with a homestead property in Petersburg, Illinois, a lot in the Old Salem Chicago Park and another isolated 18 acres of land in Cass County. By his will the executors were directed to sell the land within five years after his death and to divide the proceeds among his children and grandchildren, one seventh going to each child or to the children of any deceased child. The farmland in Cass County was heavily mortgaged, one tract to the Chicago Joint Stock Land Bank to secure a $15,000 note, payments upon which were in default, and the other to one William

E. Millstead to secure a $15,000 note which was also in default. Shortly after Stowell's death Millstead foreclosed his mortgage and obtained a certificate of purchase for over $17,000 at the foreclosure sale and obtained a deficiency judgment for $1000. Other indebtedness of the estate exceeded $3000.

The oldest son and one of the appellees herein, Leslie Stowell, was, and had been for years, a tenant on the Millstead tract. He talked with the other heirs and with William Satorius about the possibility of obtaining a Federal Land Bank Loan to redeem the Millstead tract and to refinance the Chicago Joint Stock Land Bank mortgage. Stowell and Satorius went to the office of one Frank E. Blane, an attorney who acted for both the estate of R. V. Stowell and for all of the heirs in the matters then under consideration. After this meeting, Blane contacted the heirs, advising them of a plan to refinance the property. Several meetings were held with Blane by all of the heirs living near enough to attend. Two heirs, who lived somewhere removed from Petersburg, were kept advised of the discussions and agreements by correspondence with Blane. Some time early in 1934, after a number of these meetings, Leslie Stowell and the appellant, William H. Satorius, went to Jacksonville to the Federal Farm Loan Office to discuss the question of a loan with the head of that office, M. M. Want. They were advised that it would be impossible to get a loan application unless the properties were taken in the name of one heir. Blane, after learning of this requirement, called a meeting of the heirs in his office in January, 1934, where it was agreed between the heirs to place the title of the real estate in the name of Myrtle Ann Satorius, the original defendant herein, to be held by her for the purpose of making application for a loan to save the land for the heirs. It seems to be admitted by all parties hereto that there was some discussion of a trust at that time. After this meeting Blane wrote letters to the

absent heirs explaining the trust agreement. To carry out this agreement and secure the loan, a quitclaim deed was signed and executed by all the heirs and their spouses.

Stowell and Satorius made various trips to Jacksonville and St. Louis, as representatives of all of the heirs, seeking to have loans approved. They kept itemized expense accounts. In June, 1934, the loans were secured. The money obtained by the loans was not sufficient to pay all the indebtedness plus claims. The widow, Dora Stowell, discounted her claim against the estate in the amount of $2000 and paid $500 out of her own funds to reduce the estate's indebtedness, and T. T. Lynn, administrator with will annexed of the estate of R. V. Stowell, paid the sum of $1100 out of the funds of the estate to the Chicago Joint Stock Land Bank in order to assist in the redemption and refinancing of the land. The heirs, on June 16, 1934, executed a warranty, deed to Myrtle Ann Satorius for which they received no consideration. On June 20, 1934, at the request of Dora Stowell, widow of R. V. Stowell, the certificate of purchase issued to Millstead at the foreclosure sale was assigned to Myrtle Ann Satorius after Millstead had been paid the amount due him. At about the same time, June 15, 1934, all the heirs entered into an agreement whereby they waived all their rights under the last will of said Rockwell V. Stowell, including the sale therein provided, and agreed and elected to take the real estate in kind and to take their respective shares in land instead of money. This was done subject to a life estate in one third of the property in Dora Stowell, the widow.

There is conflicting evidence as to whether or not there was a written trust agreement executed in June, 1934, after the refinancing. All of the appellees testified that they signed such a trust agreement. The appellants, Myrtle Ann Satorius and William H. Satorius, denied that they ever saw such an agreement or that any such was ever

executed. There is other testimony of disinterested parties which, although not concrete in form or specific on the question of whether or not a trust agreement was executed, indicated that some trust plan had been under consideration by the parties. William Spears testified that he had been approached to act as trustee for the property. J. C. Luther, an attorney who took over the office of Blane after Blane's death, testified that there had been considerable search through Blane's files for a trust agreement which was not found. Other witnesses testified as to the sums paid by individuals to aid in the refinancing of the property.

The master in chancery and the chancellor specifically found that there was an express written trust entered into in June of 1934, which instrument was lost; that such trust agreement provided that Myrtle Ann Satorius was to hold the property in trust for the benefit of the other heirs of Rockwell V. Stowell who were to participate in the proceeds of the property in accordance with the allocations in the will of Rockwell V. Stowell. The chancellor specifically found, in the decree, that a trust agreement was prepared in attorney Blane's office and signed by all the parties in June of 1934, which provided that Myrtle Ann Satorius held title to the real estate for the benefit of herself and the other heirs, was to collect the rents, pay taxes and upkeep, and apply the balance on the mortgage indebtedness to the Federal Land Bank, and at the end of five years the property was to be sold and the proceeds divided among the heirs in the proportions set out in the will and in the reconversion agreement. The court further specifically found, despite the contentions of the appellants that they did not sign the agreement, that they employed the same attorney as the other heirs, attended the meetings and made no objections to the plan of refinancing, and that the trust agreement was signed first by Myrtle Ann Satorius and then by her husband, William H., who was followed by the other heirs, all of whom signed the agreement in

attorney Blane's office in his presence, and in the presence of his secretary, one Mildred Smedley, a notary public who acknowledged the trust agreement. The court further specifically found that although the appellees were contradicted by the appellants, they were corroborated in part by the witness W. G. Spears, by attorney Blane's letter, and by other documentary evidence.

Inasmuch as the lower court found an express written trust agreement signed and executed by all the heirs, including the appellants, in June of 1934, the contention that the Statute of Frauds applied to this case is not well founded if, in fact, such agreement was executed. The agreement, if executed, being in writing, satisfies the Statute of Frauds, which provides in part "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, shall be manifested and provided by some writing signed by the party who is by law enabled to declare such trust." Ill. Rev. Stat. 1951, chap. 59, par. 9.

The appellants devote a considerable portion of their argument to the contention that the complaint of appellees is based upon allegations of particular facts and under the rules of pleading these allegations had to be proved as alleged before the appellees were entitled to a favorable decree. Their arguments on this point seem to be that inasmuch as the complaint alleged merely that the defendant, Myrtle Ann Satorius, agreed to execute a declaration of trust, whereas the proof showed that a declaration of trust had been executed, the proof was contrary to the allegations of the complaint and cannot justify the decree entered herein. They cite *Steinhauer* v. *Botsford,* 327 Ill. App. 296. In this case the allegations of the complaint were that the plaintiff conveyed the property in question to the defendant by a quitclaim deed which, although appearing to be absolute on its face, was not so intended by the parties in that they all agreed at that time that the deed would be additional security for mortgage indebted-

ness. The Appellate Court held that it is elemental that where a plaintiff fails to prove a cause of action made by his complaint, he is not entitled to recover, although the facts actually proved would have entitled him to relief had his bill been framed on a different theory, citing *Oetting* v. *Graham*, 373 Ill. 247.

The *Steinhauer case* is not determinative of the facts here and cannot be extended to the lengths to which the appellants contend it should be carried. Examining the decision carefully it is apparent that, while the entire complaint was based upon an oral agreement, there was absolutely no proof in the record to prove any agreement at all. The Appellate Court specifically remarked that not only was there no evidence in the record to show that the plaintiff and the defendant entered into an alleged oral agreement but the plaintiffs made no attempt in the hearing of the cause to prove any such agreement. The decision repeats the well-established rule that a party to a suit, either at law or equity, cannot have relief under proofs without allegations, nor under allegations without proof in support thereof. *Leitch* v. *Sanitary Dist.* 386 Ill. 433.

Here, the appellees alleged and introduced proof that a transfer had been made to Myrtle Ann Satorius under an agreement whereby she would enter into a declaration of trust stating that she held the land for the benefit of the heirs. This occurred in January of 1934. The proof, then, showed that subsequently, in June of 1934, after she had secured the loan for which the property had been given to her, she entered into a later trust agreement. There was ample proof as to the meetings between the parties and the discussions and events leading up to the trust agreement in June, 1934. The complaint concluded with a specific prayer as well as a general prayer for relief. There is no question but that appellants understood the nature of the claim and understood they were called upon to counteract proof of a trust. The general prayer for relief, under

our law, is sufficient to support any decree warranted by the facts alleged by the complaint and established by the evidence. (*Geiger* v. *Merle*, 360 Ill. 497.) In addition, section 34 of the Civil Practice Act provides that the prayer for relief shall not, except in cases of default, be deemed to limit the relief obtainable. (Ill. Rev. Stat. 1951, chap. 110, par. 158.) In the instant cause there was ample testimony to support the allegations of the complaint and, in addition, to prove a written trust. This was not such variance, however, under the ruling of the *Geiger case,* to overturn the decree on the grounds that the proof did not conform to the allegations of the complaint.

The complaint contained allegations sufficient to give rise to a constructive trust. A trust was proved, albeit a written trust. Such a variance is to form and not substance. The general rule is that no variance shall be deemed material unless it misleads the adverse party to his prejudice. Matters of form are not prejudicial.

The evidence concerning the existence of a written trust agreement is conflicting. The appellees all agree that a written trust was executed between the parties. The appellants are just as firm in their denial. On the question of proof of the written trust the appellees, Edwards, Giles Stowell, Blanche Christenson, Dorotha Grosboll and Leslie Stowell all specifically testify that a trust agreement was drawn up by attorney Blane and signed by all parties, whereby the appellees waived their right to a partition or sale for a period of five years. The rents were to pay the indebtedness, the property was then to be sold and divided according to the will. To support this testimony there was the letter of attorney Blane, who represented all of the parties, to two of the heirs asking them to sign the quitclaim deed to Myrtle Ann Satorius and explaining it was to be signed subject to the execution of a trust agreement. Further, the deeds which were given to Myrtle Ann Satorius were without consideration, a reconversion agree-

ment was entered into by all of the heirs whereby they agreed to waive their right to partition under their father's will and take the land in kind. William H. Satorius gave a receipt to Leslie Stowell which was signed "Myrtle Ann Satorius by W. H. Satorius, trustee-elect." William Spears testified that he had been approached to act as trustee of the land in question and there was ample testimony in the record that all the heirs contributed to some degree in obtaining the loan and have expended money to pay the indebtedness for the purpose of saving the land.

In view of all this evidence, it is difficult to see the merit in the appellants' contention that the proof was not clear, convincing, and so strong, unequivocal and unmistakable as to lead to but one conclusion. There is but one conclusion to be reached from reading the evidence and that is that there were 559 acres of property embraced in the trust, that the children and grandchildren of Rockwell V. Stowell were the persons in whose behalf the trust was executed, that they were to take the interest in the trust which they had in the property under Rockwell V. Stowell's will, and that the trust was to be continued for five years or until such time as the indebtedness had been paid out of the rents and profits. These requirements are all that are necessary to constitute a valid trust. (*Reighley* v. *Continental Illinois Nat. Bank and Trust Co. of Chicago,* 390 Ill. 242.) Wherever an intention to create a trust can be fairly collected from the language of the instrument and the terms employed, such intention will be supported by the court. *Orr* v. *Yates,* 209 Ill. 222.

Obviously, the history behind the transaction here discloses very definitely that a trust was always intended by the heirs. In the first instance, Satorius and Leslie Stowell went to the Land Bank to negotiate a loan to save the property. At that time they determined they would try to do it in the names of all the heirs. The only basis upon which Myrtle Ann Satorius ever got the property in ques-

tion in her hands was the requirement of the Land Bank that the application for a loan be made in the name of one of the heirs. There is evidence to the effect that in the first instance the matter was always discussed on the basis of a trust agreement. Here, the parties were near relatives, brothers and sisters, nieces and nephews. They desired to save property which was ample in extent even though encumbered. They took the only means open to them to do so. In the construction of a trust agreement it is always pertinent to consider the facts and circumstances which give rise to its execution together with the provisions of the instrument. *Harris Trust and Savings Bank* v. *Wanner,* 393 Ill. 598.

The only conclusion which can be reached from this record and the evidence submitted in this cause is that a trust agreement was entered into by Myrtle Ann Satorius after she took title to the property for the purpose and sole purpose of obtaining a loan on it. The requirements of *Stephens* v. *Collison,* 330 Ill. 48, that the oral evidence must, to establish the execution of a lost instrument, be clear and strong, satisfactory and convincing, has been met. There has been a difference in the evidence in the cause depending upon which side the parties were on. The master, however, heard the evidence, listened to the witnesses, saw the documentary evidence, and passed his recommendations on to the chancellor. The chancellor after considering the case for a considerable period of time entered a written decree whereby he found in favor of the appellees. In such case it is the province of the master in the first instance to determine the facts and, while his findings of fact do not carry the same weight as a jury, nor a chancellor where the witnesses have testified before him, his findings are entitled to due weight on review of the cause and a reviewing court is not justified in disturbing them unless they are manifestly against the weight of the evidence. (*Pasedach* v. *Auw,* 364 Ill. 491.) There is ample proof to sus-

tain the master and it justifies the finding that a written trust agreement was entered into in the latter part of June, 1934, between the appellants and appellees. It is perfectly proper, under our law, when a document is lost or not available for production in court, to prove its loss or destruction and then prove its contents by oral evidence. *Hiss* v. *Hiss,* 228 Ill. 414.

For the reasons set forth herein, the decree of the circuit court of Cass County is affirmed.

*Decree affirmed.*