ILLINOIS VALLEY ELECTRIC CO-OPERATIVE, INC., Plaintiff-Appellant, v. THE CITY OF PRINCETON, Defendant-Appellee.

Third District   No. 3—91—0624

Opinion filed May 19, 1992.—Rehearing denied July 7, 1992.

Claudon, Lloyd, Barnhart & Beal, Ltd., of Canton (Gary E. Barnhart, of counsel), for appellant.

Trimble, Angel, Isaacson & Tracy, of Princeton (John Isaacson, of counsel), for appellee.

JUSTICE SLATER delivered the opinion of the court:

This case involves a dispute between plaintiff Illinois Valley Electric Co-Operative, Inc. (IVEC), and defendant City of Princeton (City) over which party is entitled to provide electricity to certain properties lying outside the corporate limits of the City. The trial court ruled in favor of the City. We affirm.

As a preliminary matter, we note that only count II of plaintiff's original complaint is before this court. Four additional counts contained in plaintiff's original and amended complaints were dismissed by the trial court prior to its decision on the merits of count II. Plaintiff's attempt to appeal from the dismissal of those counts was dismissed by this court as untimely or because they had been abandoned.

■ The City operates a municipal utility pursuant to the Illinois Municipal Code (the Code) (Ill. Rev. Stat. 1985, ch. 24, par. 1—1—1 *et seq.*), which allows the City to own and operate a public utility within its corporate limits (Ill. Rev. Stat. 1985, ch. 24, par. 11—117—1). The Code also allows the City to own and operate power lines or substations outside the corporate limits, but effective October 1, 1972, "no new customer which an electric supplier is entitled to serve under the Electric Supplier Act [(Ill. Rev. Stat. 1985, ch. 111²/₃, par. 401 *et seq.*)] may be served from any line, lines or other facilities located without the corporate limits of a municipality unless waiver to serve such a customer is given in writing by the electric supplier" (Ill. Rev. Stat. 1985, ch. 24, par. 11—117—1).

The City provides electrical services to a subdivision, two trailer courts and a few other individual customers located outside the corporate limits. Count II of IVEC's complaint sought declaratory and injunctive relief to prevent the City from continuing to service these customers. The parties submitted a stipulated statement of facts to the trial court, relevant portions of which are summarized below.

Max Coville started working for the City's municipal utility in 1950. Coville became distribution superintendent in 1967 and held that position until he retired in 1986. Coville identified the following properties located outside the City as receiving electrical service from the municipal utility: the Old Brewery Lake subdivision, connected in 1963; the Brenda Fetzer property, connected af-

ter 1986; the George Byers property, located in the Old Brewery Lake subdivision, connected in 1984 or 1985; Elm City trailer park, connected between 1963 and 1965; Hillview trailer park, originally connected in the late 1950s or early 1960s with lines rebuilt and two new meter loops installed in the early 1970s; the Steven Schmidt property, connected in the middle 1970s, which was part of a larger property owned by Schmidt's father which was connected in the middle or early 1960s or possibly as early as the 1950s; the Bob Fritz property, connected about 1978; Enstar cable television company, connected in approximately 1977; and the Vi Strunk property, connected since the early 1950s.

According to Coville, two IVEC officials, Milford Jontz and Roy Horton, met with City officials in 1963 to discuss extending electric service to the Old Brewery Lake property and the Elm City trailer park. IVEC did not want to service these areas because they were too far away. The City and IVEC agreed that the City would service Old Brewery Lake and Elm City and in exchange IVEC would be allowed to service its office building located within the City limits. To the best of Coville's knowledge, no written document was prepared regarding this agreement, nor did he know whether the City had any record of the agreement, although the City did keep minutes of its meetings.

Milford Jontz began working for IVEC in 1940 and was manager from 1958 until he left the company in 1979. According to Jontz, IVEC agreed to let the City provide electrical service to the Old Brewery Lake subdivision and he thought that this agreement should be reflected in IVEC's minutes. IVEC and the City reached a similar agreement with regard to Elm City trailer park after two or three meetings between IVEC's president and vice-president and the City's utility manager. Jontz initially stated that he believed IVEC provided service to Hillview trailer park, but later stated that IVEC told the owner of the trailer park to see the City about electric service. Although Jontz thought that IVEC serviced a couple of trailers in the park, he admitted that he was unsure. Jontz related that it was IVEC's policy during the time that he was manager that if the City had a primary line closer to a location than IVEC, then the City was allowed to serve that property. IVEC was operating on a very limited budget and wanted to give its customers the cheapest rate that it possibly could. At that time IVEC was operating in eight counties and "it had about all it could handle, as far as building lines and so forth." This policy, which was in effect from approximately 1955 to 1979, should have been reflected in IVEC's

minutes, although Jontz did not know if it was. IVEC kept minutes of meetings on a regular basis and these minutes accurately reflected what occurred at the meetings.

Sharon Mercer was manager of the City's municipal utility from 1976 to 1989. She stated that the City had no written policy regarding extending power outside the City limits. Mercer was not aware of any written agreements in the City's records which would allow the City to furnish power outside the City limits.

Jack Best has been IVEC's assistant manager since 1977. Best conducted an exhaustive search of IVEC's records in an attempt to locate any written minutes reflecting the policy referred to by Jontz of allowing the City to serve customers outside the City limits. No such minutes could be found, nor were there any written agreements or memoranda of oral agreements indicating that IVEC allowed the City to service the Old Brewery Lake subdivision, Elm City trailer park or other properties.

Timothy Christensen has been general manager of IVEC since 1983. Christensen testified that a thorough review of IVEC's records failed to disclose any minutes, memoranda or written agreements which would substantiate Jontz's recollection that IVEC allowed the City to serve customers located outside the City limits. The only agreement between IVEC and the City found by Christensen was one in which the City released the right to serve IVEC's east warehouse in 1983 and another agreement in which IVEC released the right to serve the City's landfill in 1986. Christensen acknowledged that IVEC provides electricity to its corporate headquarters which are located within the City limits, even though those headquarters are not included in the agreement allowing IVEC to serve its east warehouse.

The parties stipulated to certain meter set date records which showed the date on which various meters were set by the City in the Old Brewery Lake subdivision, Elm City trailer park, Hillview trailer park, and other properties. Many of the meters were set after the effective date of the Electric Supplier Act, which was July 2, 1965.

In its order entering judgment for the City, the trial court found:

> "1. That the City of Princeton is entitled to serve with electric service both the Old Brewery Lake Subdivision and Wilson/Elm City/the Grove Trailer Court despite the fact they are located outside the corporate limits of the City pursuant to an agreement between the City of Princeton and Illi-

nois Valley Electric Cooperative entered into in the early 1960s whereby the City would serve the aforementioned properties and the Illinois Valley Electric Cooperative would serve its headquarters which is located within the corporate limits of the City of Princeton.

2. That the City of Princeton is entitled to supply electric service to Hillview Trailer Court despite the fact the same is located outside the corporate limits of the City of Princeton by virtue of the fact the City was serving Hillview Trailer Court prior to October 1, 1972, and no new meters or service has been provided Hillview Trailer Court after October 1, 1972.

3. That the City is entitled to provide electric service to LaVerne Schmidt despite the fact he is located outside the corporate limits of the City of Princeton as he was a customer of the City prior to both the effective date of the Electric Supplier Act and Sec. 11—117—1 of the Illinois Municipal Code.

4. That the City of Princeton is entitled to provide electric service through meters originally set in the names of Loyd Whitlock, Steven L. Schmidt, Bob Fritz and Princeton Cable TV despite the fact the same are located outside the corporate limits of the City of Princeton as the City provided electric service to the same initially in reliance on a policy espoused by the Illinois Valley Electric Cooperative that whichever electric supplier was closer to a potential customer, that supplier would provide service to that customer and the Coop is now estopped from asserting compliance with the Illinois Municipal Code, Sec. 11—117—1, after the City relied upon the Illinois Valley Electric Cooperative's policy."

■ Plaintiff IVEC first contends that the trial court erred in finding that the City and IVEC entered into an agreement regarding service to the Old Brewery Lake subdivision and the Elm City trailer park. IVEC maintains that the official acts of municipal corporations must be recorded, that those records are the only lawful evidence of such acts and that such records cannot be contradicted or supplemented by oral evidence. (*Western Sand & Gravel Co. v. Town of Cornwall* (1954), 2 Ill. 2d 560, 119 N.E.2d 261.) IVEC also notes that silence in the record of a legislative body as to anything required to be shown is evidence of its nonexistence. (*People ex rel. Anderson v. Chicago & North Western Ry. Co.* (1947), 396 Ill. 466, 71 N.E.2d 701.) Since no written evidence of the agreement be-

tween the City and IVEC was introduced, IVEC contends that the trial court's finding of such an agreement was erroneous.

Assuming that the agreement between the City and IVEC concerning service to the Old Brewery Lake subdivision and the Elm City trailer park is the type of "official act" referred to in *Western Sand,* we nevertheless affirm the trial court's decision. It is undisputed that the City began providing electrical service to these areas in the early 1960s, long before section 11—117—1 of the Code required a written waiver. These properties were therefore not subject to the written waiver requirement. With respect to the seven Old Brewery Lake subdivision residences which the meter set record indicates were connected after October 1, 1972, we find that these residences were not "new customers which an electric supplier is entitled to serve" (Ill. Rev. Stat. 1985, ch. 24, par. 11—117—1) by virtue of their location in the Old Brewery Lake subdivision. See *Illinois Power Co. v. Illinois Commerce Comm'n* (1968), 39 Ill. 2d 406, 235 N.E.2d 614 (no error in treating entire subdivision as a single unit).

■ Similarly, we find no error in the trial court's determination that the City was entitled to supply electric service to the Hillview trailer park and the LaVerne Schmidt residence. As noted by the court, the City was serving Hillview prior to October 1, 1972, and no new meters or service had been provided after that date. Service to the LaVerne Schmidt property predated both the Electric Supplier Act and section 11—117—1 of the Code. No written waiver was required for the City to service those properties.

IVEC contends, however, that Hillview trailer park is not exempt from section 11—117—1 because the owner of the park resells the electricity provided by the City to those people who live in the individual trailers. IVEC argues that treating the entire trailer park as the City's customer constitutes an unwarranted circumvention of the legislative intent to prohibit municipalities from serving outside their corporate boundaries where other electric suppliers are able to serve. We do not agree. Max Coville's testimony indicates that two-thirds of the existing trailers were in place by 1965 and by 1972 "[p]robably all of the existing trailers that are there now would have been there." It therefore appears that the residents of the trailer park were being served by the City prior to the amendment to section 11—117—1 of the Code and thus are not "new" customers. Furthermore, this case does not present a situation where the City is supplying electricity to a customer for transportation by the customer to locations within the service area of another sup-

plier (see, *e.g., Central Illinois Public Service Co. v. Illinois Commerce Comm'n* (1990), 202 Ill. App. 3d 567, 560 N.E.2d 363) inasmuch as we deem the Hillview trailer park to be a single location served by the City (see *Coles-Moultrie Electric Cooperative v. Illinois Commerce Comm'n* (1979), 76 Ill. App. 3d 165, 394 N.E.2d 1068 (70-acre tract containing 2 houses and 19 trailers constituted a single location )).

■ Finally, with respect to the remaining properties referred to in paragraph 4 of the trial court's order, we affirm the trial court's ruling that the City is entitled to serve those properties. The trial court found that IVEC was estopped from asserting the City's noncompliance with section 11—117—1 of the Code due to the City's reliance on IVEC's policy of allowing the City to serve locations where the City had a primary power line closer than IVEC. The first three elements of equitable estoppel, however, are: (1) words or conduct by the party against whom estoppel is asserted amounting to a misrepresentation or concealment of material facts; (2) the party to be estopped must have had knowledge that the representations were untrue at the time they were made; and (3) the truth regarding the representations must be unknown to the party claiming the benefit of the estoppel. (*Vaughn v. Speaker* (1988), 126 Ill. 2d 150, 533 N.E.2d 885; *Union National Bank & Trust Co. v. Carlstrom* (1985), 134 Ill. App. 3d 985, 481 N.E.2d 300.) IVEC's policy of allowing the City to serve certain customers does not appear to be a misrepresentation or untruth. We believe, therefore, that applying a theory of estoppel to the facts of this case is inappropriate. We instead find that IVEC has waived the issue of the City's noncompliance with section 11—117—1 as it affects service to the Lloyd Whitlock, Steven Schmidt, Bob Fritz and Enstar cable television properties.

Waiver is the intentional relinquishment of a known right. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) A waiver may be express or it can be implied from the acts, words or conduct of the party waiving the right. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 492 N.E.2d 1284.) In this case IVEC's own manager, Milford Jontz, explained IVEC's policy of allowing the City to serve locations near its primary power lines. The parties' conduct appears to be consistent with the existence of such a policy. According to Jontz this policy was in effect until 1979. We note that the meter set date records show that the Whitlock, Schmidt, Fritz and Enstar properties were connected to the City's utility between 1972 and 1976. IVEC has waived any

objection to the City's right to serve these properties, and we affirm the trial court's order on that basis. See *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457 N.E.2d 9 (judgment may be sustained upon any ground warranted, regardless of whether it was relied on by trial court and regardless of whether reason given by trial court was correct); *Schaumburg State Bank v. Bank of Wheaton* (1990), 197 Ill. App. 3d 713, 555 N.E.2d 48 (judgment may be affirmed based on any reason appearing in the record).

For the reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

GORMAN and McCUSKEY, JJ., concur.