RONALD HINES *et al.*, Plaintiffs-Appellees, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 4—97—0368

Argued November 18, 1997—Opinion filed August 11, 1998.

William L. Townsley (argued), of Sebat, Swanson, Banks, Garman & Townsley, of Danville, for appellant.

Frederick H. Underhill (argued), of Groppi, McNamara & Underhill, of Danville, for appellees.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs, Ronald and Shirley Hines (the Hines), brought this action against defendant Allstate Insurance Company, seeking to recover additional living expenses covered by a homeowners policy. Allstate defended on the basis that the Hines failed to exercise due diligence in resolving their claim and failed to file suit within the one year required by the policy. The trial court entered judgment in favor of the Hines. Allstate appeals. We affirm.

The Hines suffered a fire loss at their home on May 23, 1992. The Hines' policy provided the following coverages: (1) loss of contents; (2) repair costs on the structure of up to $68,000 or full replacement costs if the repair costs exceeded $68,000; and (3) additional living expenses during the time necessary to repair or replace the structure using due diligence and dispatch. Allstate paid the Hines the maximum amount for their loss of contents in January 1993. Allstate paid the Hines $63,343.94 for their structural loss on August 18, 1993, after which the Hines demolished their existing structure and rebuilt it, completing their rebuilding in February 1994. Allstate made partial payments on living expenses at various times, including a payment in November 1992, a payment of $8,457 in June 1993, and a payment of $1,425 on July 26, 1993.

The structural claim negotiations began immediately after the fire when Allstate employed White Construction, which on May 28, 1992, submitted a repair estimate of $66,659. Allstate reduced that estimate to $57,687.60. On July 8, 1992, the Hines' public adjuster, Continental Fire Adjusters (CFA), agreed to a figure of $59,687.60 with Allstate's adjuster. Allstate then prepared a check for $45,875.18, which it said represented the actual cash value of the repairs. On July 15, 1992, the Hines sent Allstate an estimate prepared by Progressive Builders in the amount of $81,999, and a few days later a P&W Construction estimate in the amount of $79,491. At a meeting on July 27, 1992, the Hines told Allstate that CFA did not represent them. The next day, White Construction submitted an estimate in the amount of $61,904, which had been revised after negotiations between White Construction and Allstate. Allstate stated that White Construction could finish those repairs within 60 days. The Hines replied that the estimate left out several important items. On September 4, 1992, Allstate threatened to terminate the Hines' reimbursement for living expenses as of November 19, 1992. The Hines then offered to settle the structural claim for $68,000, but Allstate rejected the offer.

In November 1992, Allstate advised the Hines that reimbursement for their living expenses would be terminated on December 15, 1992, due to the Hines' failure to exercise due diligence and dispatch in resolving their structural claim.

There were continued negotiations and submission of receipts for living expenses and loss of contents in November and December 1992 and January 1993. The Hines later submitted receipts for living expenses through March 1993. On June 8, 1993, Allstate informed the Hines it was reducing their claim for living expenses and again stated the benefits for living expenses had been terminated as of December 15, 1992. On June 21, 1993, Allstate exercised its right to have the amount of the structural loss determined by appraisal and arbitration. On June 29, 1993, the Hines accepted Allstate's offer to settle the structural claim for $62,900. There were additional negotiations after June 29 regarding the living expenses and other matters, and on August 9, 1993, the Hines signed a proof of loss on the structural claim, which was followed by checks on August 18, 1993, in the amount of $63,343.94, resolving the structural claim.

On August 11, 1994, the Hines filed this lawsuit, seeking $18,839 in additional living expenses for the period December 16, 1992, through February 28, 1994, the date they completed the demolition and rebuilding of their home. Allstate defended on two grounds: (1) the Hines were not entitled to additional living expenses after December 15, 1992, because they had failed to exercise due diligence and dispatch in resolving their structural claim; and (2) the Hines did not comply with a limitations period contained in their policy, which required them to file suit within one year of the date of loss.

The trial court rejected the due diligence defense, finding that there was an honest difference of opinion regarding damages, that in fact the maximum had been paid for loss of contents, and that there was no lack of due diligence on the part of the Hines. The trial court declined, however, to award living expenses through the date the Hines completed the replacement of their home. The structural claim settlement was for the repair of the home, not for its replacement, and the trial court accordingly awarded the Hines living expenses through the date repairs apparently could have been completed, the end of October 1993. The trial court calculated those living expenses to be $14,751.58. Allstate had indicated the repairs could be completed in 60 days, and 60 days after August 18 would be approximately the end of October.

■ Allstate first argues that the trial court erred in finding that the Hines had exercised due diligence and dispatch in resolving their claim. The trial court's findings in a bench trial will not be disturbed unless they are against the manifest weight of the evidence. A judg-

ment is against the manifest weight of the evidence when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215, 647 N.E.2d 273, 277 (1995).

■ The trial court's findings of due diligence and dispatch were not against the manifest weight of the evidence. The dispute over the amount of repairs was an important one, because if the repairs exceeded $68,000 the Hines would have been entitled not just to repairs but to replacement costs and to significantly more money. The fact that the Hines did eventually replace the structure using their own funds is some indication their position that the structure was a total loss was taken in good faith. The Hines' position was supported by the Progressive Builders and P&W Construction estimates. Allstate argues that it, not the Hines, had the right to choose whether the property would be repaired or replaced. Allstate did not have that option if the cost of repairs exceeded $68,000. In that event the Hines were entitled to replace the structure if they chose to do so. Allstate argues that the Hines were unreasonable in not accepting Allstate's offers but it appears equally plausible that Allstate was unreasonable in rejecting the Hines' offers.

■ Allstate next argues the Hines did not bring suit within the time required by the policy:

"No suit or action may be brought against us unless there has been full compliance with all of the policy terms. Any suit or action must be brought within one year after the date of loss."

There is an important statutory restriction on these policy periods of limitation. A policy period of limitations is "tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." 215 ILCS 5/143.1 (West 1996); see also *Vala v. Pacific Insurance Co.*, 296 Ill. App. 3d 968, 971-72, 695 N.E.2d 581, 583 (1998). It is interesting to note that although the policy here requires that suit be brought within one year of the date of loss, the policy does not limit additional living expenses to one year, only to whatever time is necessary to repair or replace.

■ It is unclear how a policy provision that requires that suit be brought within one year after the date of loss can be applied to coverage for additional living expenses, where the living expense loss does not occur all at once, but over a period of time. The argument could be made that there is no loss until the time harm is suffered by the insured. See *McCray v. Merit Insurance Co.*, 233 Ill. App. 3d 36, 38-39, 598 N.E.2d 366, 368-69 (1992) (uninsured motorist policy; loss occurs when it is determined uninsured driver cannot compensate plaintiff). Under that argument there is a new date of loss each day the insured

incurs additional living expenses. Under that argument, if the insured incurs living expenses for a period of three years, after which he immediately files suit, the insured will be compensated for the last year but not for the first two. The parties argued in their briefs that the date of the fire is the date of the loss. Under that analysis claims for living expenses could be barred before those living expenses were ever incurred. Perhaps recognizing the difficulty of that position, Allstate suggested in oral argument, for the first time, that the date of loss was December 15, 1992. We must follow the rule of construction that if an insurance policy is ambiguous it will be construed against the insurer and in favor of coverage. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09, 607 N.E.2d 1204, 1212 (1992). Assuming that the policy period of limitations applies at all to claims for additional living expenses, we agree with the trial court that the claim here was not barred.

For the purposes of discussion we accept the parties' argument in their briefs that the date of loss was the date of the fire. The major question in this case involves the tolling period provided by section 143.1 of the Illinois Insurance Code (215 ILCS 5/143.1 (West 1996)). When did that tolling period begin and when did it end? It is implicit in the trial court's order that the tolling period began immediately after the fire, when Allstate began its investigation and the Hines submitted the information requested by Allstate. It is further implicit in the trial court's order that the tolling period ended August 18, 1993, when Allstate made its final payment on the structural claim.

We cannot say the trial court erred in determining that a proof of loss "in whatever form is required by the policy" was filed immediately after the fire. Allstate argues that negotiations do not toll the policy period of limitations, that negotiations do not amount to a proof of loss. Allstate states in its brief, however, that "in the beginning the parties set up a method by which the Plaintiffs were to submit receipts for the additional living expenses they incurred." Later in its brief Allstate refers to the "proofs of loss," apparently the receipts, submitted by the Hines for additional living expenses through December 15, 1992. It is possible for the filing of information with an insurance company to constitute a proof of loss and to start the tolling period, if the policy does not require a particular form of proof of loss. *Vala*, 296 Ill. App. 3d at 971, 695 N.E.2d at 583; *Trinity Bible Baptist Church v. Federal Kemper Insurance Co.*, 219 Ill. App. 3d 156, 161, 578 N.E.2d 1375, 1378 (1991).

Why did Allstate pay the structural claim on August 18, 1993, which was more than a year after the fire on May 23, 1992? A proof of loss was submitted on the structural claim on August 9, 1993, but that

was also more than a year after the fire. During oral argument Allstate conceded that it was estopped by its conduct to assert the policy period of limitations as to the structural claim. Allstate argues, however, that the living expenses claim is separate from the structural claim. We do not understand how that can be possible. The amount of additional living expenses cannot be determined until the structure is repaired or replaced. The structure cannot be repaired or replaced until it is determined whether repair is appropriate, what the costs will be, and a contractor is secured. The insured is entitled to his actual living expenses, not to an estimate of what those expenses might be. If the insured unreasonably delays the settlement of the structural claim it may be possible to terminate the living expenses before the structural claim is settled, but the trial court found there was no unreasonable delay here. The living expenses claim and the structural claim seem inextricably intertwined.

Section 143.1 provides for tolling "until the date the claim is denied in whole or in part." 215 ILCS 5/143.1 (West 1996). Section 143.1 could be read to say that when a claim consists of several parts, and the insurance company firmly announces it will pay nothing or only a limited amount on one part, the insured must quickly file suit on that part. Such a construction makes little sense when the parties' negotiations are proceeding satisfactorily on the remaining parts. Filing suit would almost certainly interfere with the remaining negotiations. Plaintiffs are generally not permitted to split their causes of action and, accordingly, would be required to file suit on the entire claim, not just a part of the claim. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340, 665 N.E.2d 1199, 1206 (1996). Filing suit might prove unnecessary if the insured were eventually satisfied with the remainder of the settlement. Requiring suit on a part of a claim also requires court determination as to the precise moment the insurer has made a final decision on a part of the claim, an unlikely proposition to begin with. Why would an insurer irreversibly refuse to give in on one point, when giving in later proves beneficial to the overall settlement? Claims are generally resolved or they are not resolved; they are not resolved in part. The better view is that section 143.1 refers to the point at which the insurer has made a final disposition of the claim, whether the claim is thereby denied in its entirety or paid in part and denied in part.

The trial court properly concluded that proof of loss was made immediately after the fire and that tolling of the one-year policy period of limitations, pursuant to section 143.1, began at that time. Likewise the trial court properly concluded the tolling period did not end until August 18, 1993, when the last part of the claim was finally resolved.

Accordingly the lawsuit was properly filed within the one-year period of limitations provided by the policy.

The judgment of the trial court is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.