NO.  4-03-0810

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

PATRICIA GREELING,

        Plaintiff-Appellee,

        v.

HARRY JOE ABENDROTH, Executor of the Estate of MARGARET COOPER, Deceased; and HARRY JOE ABENDROTH, 

        Defendants-Appellants.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of 

Macoupin County

No. 02L4

Honorable

Thomas P. Carmody,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, Patricia Greeling, and Margaret Cooper were joint tenants of a certificate of deposit purchased by Everette Cooper, Margaret's husband and plaintiff's father by a previous marriage.  Soon after Everette died, Margaret and her son by a previous marriage, Harry Joe Abendroth, went to the bank and, although the certificate of deposit was still in plaintiff's possession, persuaded the bank to cash it.  With the proceeds, Margaret purchased a new certificate of deposit payable to herself, Abendroth, and Debbie Brashears.  Margaret has since passed away.

When the bank refused to pay her, plaintiff sued Abendroth individually and in his capacity as the executor of Margaret's estate, seeking to recover under section 4 of the Joint Tenancy Act (Act) (765 ILCS 1005/4 (West 2000)).  (We will refer to Abendroth in his two capacities as "defendants."  In his individual capacity, we will call him "Abendroth.")  At the conclusion of a trial, the trial court entered judgment against defendants and in plaintiff's favor in the amount of half the principal and accrued interest of the new certificate of deposit.

Defendants appeal on the following grounds:  (1) by its terms, the certificate of deposit purchased by Everette allowed Margaret to cash it in and keep the proceeds; (2) because section 4 applies only to actions between cotenants, Abendroth cannot incur liability under that section; and (3) Brashears, not named as a defendant in this case, was a necessary party.  

We hold that while plaintiff had possession of the certificate of deposit, Margaret could not rightfully cash it.  The trial court could have reasonably found that by inducing the bank to pay Margaret without the surrender of the certificate according to its terms, Abendroth committed the common-law tort of intentional interference with a contractual relationship.  The court did not award plaintiff any interest in the new certificate of deposit; rather, it awarded her a money judgment payable out of no particular source, and therefore Brashears is not a necessary party.  We affirm. 

I. BACKGROUND

Everette bought the certificate of deposit on January 26, 2002, for $99,449.26 and made it payable to "Everette Cooper or Margaret Cooper or Patricia Greeling."  It matured on April 4, 2002.  On its face, the certificate expressly incorporated "the [a]dditional [t]erms and [c]onditions stated on the reverse," including the following:

     "JOINT CERTIFICATES:  When two or more persons are named as depositors on this [c]ertificate with the conjunction 'or' appearing between names, then such [c]ertificate shall be payable to any of the survivor or survivors of them[,] and payment may be made[,] upon surrender of this [c]ertificate[,] to any of them during the lifetime of all, or to any survivor or survivors after the death of one or more of them.  When the conjunction 'and' appears between names, the [c]ertificate shall be payable only upon the signatures of all depositors named."

About three weeks before his death, Everette delivered the certificate of deposit to plaintiff in the presence of Margaret.  After Everette's death on January 17, 2003, plaintiff still had the certificate in her possession.

On January 26, 2003, Margaret and Abendroth went to the bank and said they wanted to cash the certificate of deposit, which at that time had a face amount of $100,420.93.  The bank officer asked where the certificate of deposit was.  Abendroth testified:  

"We said that it was still being held by [plaintiff], and it was supposed to be in the [lock]box, and the certificate that was returned to us, as we said before, we asked for this three times, and my mother asked for the [lockbox] returned three times.  When the [lockbox] was returned, the [certificate of deposit] was not enclosed.  And that, I would think, is my mother's property."

The bank allowed Margaret to cash the certificate of deposit on condition that she sign an indemnity bond, which stated "the said certificate of deposit is supposed to be lost" and in which she promised to "deliver up said certificate of deposit[,] when found, to said bank."  Margaret signed the bond, and the bank paid her the proceeds, $99,449.26, which she used to buy a new certificate of deposit payable to "Margaret Cooper or Harry Abendorth [
sic
] or Debbie Brashears."  A "Debit" of the account, signed by a bank officer, reads:  "CD [(certificate of deposit)] [l]ost."

  The $99,449.26 was calculated as follows:  the face amount of the old certificate of deposit, $100,420.93, plus the accrued interest, $308.69, minus a penalty, $1,280.36.

In its judgment order, the trial court awarded plaintiff half the principal of the new certificate of deposit, $49,724.63, plus accrued interest.  The court reasoned that if one accepted defendants' position, "the outcome of the case would depend on which survivor whose name appeared on the joint [c]ertificate of [d]eposit arrived at the bank ahead of the other.  Surely the law does not and cannot rest upon such a frivolous basis[] and one wholly lacking in reason or substance."  Everette, the court found, intended "that his wife and daughter share those proceeds equally."           

This appeal followed.

II. ANALYSIS

A. Is Plaintiff "Aggrieved" Within the Meaning of Section 4?

On the authority of section 4 of the Act (765 ILCS 1005/4 (West 2000)), the trial court ordered defendants to pay plaintiff damages in the amount of one-half the value of the principal and accrued interest represented by the new certificate of deposit.  That statute provides:

     "If any person shall assume and exercise exclusive ownership over, or take away, destroy, lessen in value, or otherwise injure or abuse any property held in joint tenancy ***, the party aggrieved shall have his civil action for the injury in the same manner as he would have if such joint tenancy *** did not exist."  765 ILCS 1005/4 (West 2000).

(The court also relied on section 4a of the Act (765 ILCS 1005/4a (West 2000)), but that section was actually irrelevant because it applied only to cotenants of realty (see 
Reichmann v. Reichmann
, 5 Ill. App. 3d 645, 646-47, 283 N.E.2d 734, 735-36 (1972)).)

In common law, one cotenant of a chattel could not maintain an action against another cotenant to gain possession of the chattel, even though the latter cotenant was acting like the chattel's sole owner and excluding the former cotenant from all use and enjoyment of it.  
Benjamin v. Stremple
, 13 Ill. 466, 468 (1851); 
Butte & Boston Consol. Mining Co. v. Montana Ore Purchasing Co.
, 25 Mont. 41, 72-73, 63 P. 825, 828 (1901) (construing the Illinois statute, which Montana had adopted).  The reason was that the common law deemed possession by one cotenant as possession by both.  
Benjamin
, 13 Ill. at 468.  By enacting section 4, the legislature modified the common law to give the economically injured cotenant the same legal remedies that any other property owner would have.  
Benjamin
, 13 Ill. at 468; 
German National Bank v. Meadowcroft
, 95 Ill. 124, 130 (1880).  

Like any other plaintiff in a "civil action," the plaintiff must be "aggrieved" (765 ILCS 1005/4 (West 2000)), that is, the plaintiff must "suffer[] from an infringement or denial of legal rights" (Merriam-Webster's Collegiate Dictionary 23 (10th ed. 2000)).  If a cotenant assumes and exercises exclusive ownership over the chattel pursuant to a contract binding on the other cotenant, the latter cotenant is not "aggrieved" or "injured" within the meaning of any recognizable legal theory.  
Sondin v. Bernstein
, 126 Ill. App. 3d 703, 708, 467 N.E.2d 926, 930 (1984).  A joint-tenancy certificate of deposit is "subject to the provisions of the contract between the bank and its depositor[]."  
Pescetto v. Colonial Trust & Savings Bank
, 111 Ill. 2d 314, 317, 489 N.E.2d 1365, 1366 (1986) (referring to a "joint bank account").

If, as in the present case, the trial court construes a contract as a matter of law, our standard of review is 
de
 
novo
:  we construe the contract without deference to the trial court’s construction.  
Bank of Ravenswood v. Polan
, 256 Ill. App. 3d 470, 474, 628 N.E.2d 194, 197 (1993).

The signers of the certificate of deposit, Everette and the bank, were the two contracting parties.  Everette was the creditor, the bank was his debtor, and the nonnegotiable certificate of deposit was evidence of the bank’s contractual promise to him to repay the loan with interest.  See 
Drenckpohl v. Barker
, 253 Ill. App. 3d 203, 210, 625 N.E.2d 651, 656 (1993)
.  On its face, immediately above the signatures, the certificate of deposit states:  "The undersigned *** agree[] to the [a]dditional [t]erms and [c]onditions stated *** on this [c]ertificate, [e]specially including the [a]dditional [t]erms and [c]onditions stated on the reverse."  Because Everette and the bank intended to make the terms on the reverse side of the certificate of deposit part of the contract for payment of money, those terms are part of the contract, just like the terms on the front.  See 
Drenckpohl
, 253 Ill. App. 3d at 210, 625 N.E.2d at 656.

According to the terms on the back of the certificate of deposit, if the conjunction "or" appears between the names of the payees, "payment may be made[,] 
upon
 
surrender
 
of
 
this
 
certificate
[,] to any of them."  (Emphasis added.)  In context, the permissive word "may" corresponds not to the surrender of the certificate of deposit but to the bank’s discretion to pay one as opposed to all of the payees.  

In 
Drenckpohl
, 253 Ill. App. 3d at 210, 625 N.E.2d at 656, the Fifth District construed three certificates of deposit containing the same boilerplate provisions as the one in this case.  The conjunction "or" likewise appeared between the payees’ names.  
Drenckpohl
, 253 Ill. App. 3d at 205, 625 N.E.2d at 652-53.  The appellate court stated as follows:

     "The provision on the back of the certificates of deposit *** permits any one of the joint tenants to receive payment on the instruments 
by
 
surrendering
 
them
 
to
 [
the
] 
[b]ank
.  This provision conferred a benefit to each joint tenant as any of them could have received payment 
upon
 
surrender
 
of
 
the
 
certificates
 
to
 [
the
] 
[b]ank
."  (Emphases added.)  
Drenckpohl
, 253 Ill. App. 3d at 210, 625 N.E.2d at 656.

Again emphasizing the surrender of the certificates of deposit, the appellate court stated as follows:

     "According to the terms incorporated into the certificates of deposit, Velma Drenckpohl was permitted to invade the corpus of the certificates of deposit to the detriment of the other joint tenants.  ***  [She] was perfectly within her right as a joint tenant, under the terms of the certificates of deposit, to 
surrender
 
the
 
certificates
 
of
 
deposit
 
for
 
payment
."  (Emphasis added.)  
Drenckpohl
, 253 Ill. App. 3d at 210, 625 N.E.2d at 656.

Defendants rely heavily on 
Drenckpohl
, even quoting those passages.  They argue that under the "Terms and Conditions" on the reverse side of the certificate of deposit, Margaret, too, could "
surrender
 
the
 
certificate
 at any time and *** receive the entire proceeds."  (Emphasis added.)  To "surrender" something means to "giv[e] up the possession of [it,] esp[ecially] into the power of another" (Merriam-Webster's Collegiate Dictionary 1183 (10th ed. 2000)):  "the act of redelivering the instrument to the obligor" (15 W. Jaeger, Williston on Contracts §1876, at 667 (3d ed. 1972)).  Defendants seem to forget that Margaret never surrendered the certificate of deposit.  According to plaintiff, Margaret and Abendroth "knew [p]laintiff had possession of [the certificate of deposit, and] yet they cashed it by falsely representing it as lost."  Defendants never really respond to that argument.  They never explain how, under the "Terms and Conditions," which plainly contemplate a "surrender of this [c]ertificate," Margaret could cash the certificate of deposit while plaintiff still had possession of it.                

          The law existing at the time and place of the contract is considered a part of the contract as if expressly incorporated therein (
Schiro v. W.E. Gould & Co.
, 18 Ill. 2d 538, 544, 165 N.E.2d 286, 290 (1960)), and Illinois law has long recognized that one may enforce a lost instrument (
Stowell v. Satorius
, 413 Ill. 482, 494, 109 N.E.2d 734, 740 (1952)).  The instrument must be lost or destroyed, however (
Stowell
, 413 Ill. at 494, 109 N.E.2d at 740), not in the hands of an alternate payee (
cf.
 810 ILCS 5/3-309(a) (West 2000) ("[a] person not in possession of [a negotiable] instrument" may enforce it if "the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person")).  Calling the certificate of deposit "lost" was a fictional device to get around plaintiff's possession of it.

To determine whether plaintiff was "aggrieved" or "injured" (see 765 ILCS 1005/4 (West 2000)), we must consider whether she has any legal basis to complain of Margaret’s "end run" around the requirement of surrendering the certificate of deposit.  Because the benefit of the contract was direct rather than incidental to plaintiff and Margaret (just as direct, in fact, as it was to Everette himself), they were third-party beneficiaries of the contract.  See 
Carson Pirie Scott & Co. v. Parrett
, 346 Ill. 252, 257, 178 N.E. 498, 501 (1931); 
Dufresne v. American National Bank & Trust Co.
, 374 N.W.2d 763, 766 (Minn. App. 1985).  As such, they could sue for breach of the contract, even though they were strangers to both the contract and the consideration.  See 
Joslyn v. Joslyn
, 386 Ill. 387, 400, 54 N.E.2d 475, 481 (1944); 
Carson Pirie Scott
, 346 Ill. at 257, 178 N.E. at 501.      

Because a third-party beneficiary’s rights extend no further than the contract, the promisor can assert against the beneficiary any contractual defense that the promisor could assert against the promisee (
Olson v. Etheridge
, 177 Ill. 2d 396, 404-05, 686 N.E.2d 563, 566-67 (1997); E. Farnsworth, Contracts §10.9, at 772 (2d ed. 1990)), including the promisor’s right to unilaterally waive a condition that benefits the promisor (
Bartels v. Denler
, 30 Ill. App. 3d 499, 501, 333 N.E.2d 640, 642 (1975)).  If, however, the condition benefits other parties beside the promisor, each one so benefitted must waive the condition.  
O’Brien v. Kawazoye
, 27 Ill. App. 3d 810, 817, 327 N.E.2d 236, 241 (1975); 12A Ill. L. & Prac. 
Contracts
 §452, at 313 (1983).  

Apparently, plaintiff believes the bank labored under the delusion that the certificate was lost and, therefore, the bank did not so much waive surrender as erroneously deem it excused.  In a memorandum in the trial court, plaintiff argued that "[i]nsofar as the [b]ank was concerned, Margaret’s cashing of the [certificate of deposit] was permissible," given her "false statement to the bank [that] *** the [certificate of deposit] was lost."  That argument is puzzling, considering Abendroth’s testimony that he and Margaret had told the bank the certificate of deposit "was still being held by [plaintiff]."  Nevertheless, in affirming the trial court’s judgment, we are not limited by either the trial court’s rationale or the parties’ arguments but can rely on any grounds the record reveals.  
In re Estate of Bontkowski
, 337 Ill. App. 3d 72, 78, 785 N.E.2d 126, 132 (2003); 
Inland Land Appreciation Fund, L.P. v. County of Kane
, 344 Ill. App. 3d 720, 726, 800 N.E.2d 1232, 1237 (2003).  Moreover, defendants could not have been confused as to plaintiff’s theory of the case.  In the same memorandum, she argued that Margaret had "cashed the [certificate of deposit] under false pretenses."

Even though, in the indemnity bond, Margaret represented to the bank that the certificate of deposit was lost, the bank knew it was not lost, for she and Abendroth had told the bank that plaintiff had possession of it.  The bank paid Margaret anyway, intentionally relinquishing (so it would seem) its right to require the surrender of the certificate of deposit as a condition of payment (see 
Illinois Valley Electric Co-Operative, Inc. v. City of Princeton
, 229 Ill. App. 3d 631, 638, 594 N.E.2d 347, 352 (1992) (defining "waiver" as the "intentional relinquishment of a known right," by words or conduct)).  Because the certificate of deposit was 
prima
 
facie
 evidence of the bank’s continuing indebtedness (see 
In re Estate of White
, 56 Ill. 2d 265, 269, 307 N.E.2d 122, 125 (1974); 
Squires v. First National Bank of Monmouth
, 59 Ill. App. 134, 137-38 (1895)), surrendering the certificate of deposit clearly would have benefitted the bank.  It would have benefitted only the bank if the certificate had named only one payee.  The certificate named three payees, however--Everette, plaintiff, and Margaret--and while the certificate was in Everette’s possession, requiring the surrender of it as a condition of payment just as clearly benefitted him as that requirement benefitted plaintiff after he handed the certificate over to her.  The possessor of the certificate could control the payment.  With the certificate in plaintiff’s possession, the bank and Margaret could not waive the surrender of it as a condition of valid payment.  See 
O’Brien
, 27 Ill. App. 3d at 817, 327 N.E.2d at 241; 12A Ill. L. & Prac. 
Contracts
 §452, at 313-14 (1983); 
Dufresne
, 374 N.W.2d at 767. 

Plaintiff is "aggrieved" at defendants not because she has any interest in the specific funds the bank paid to Margaret.  Everette’s deposit with the bank merely created a debt, not an interest in any particular assets.  Rather, plaintiff is "aggrieved" at defendants because Margaret and Abendroth "misdirected the [bank’s] performance," thereby interfering with a contractual relationship.  See Restatement (Second) of Torts §766, Comment 
k
, at 12-13 (1979).  Margaret and Abendroth knew, or were legally presumed to know, that plaintiff was a third-beneficiary of the contract, and to deprive her of the benefit of the contract, they induced the bank to dispense with the contractual requirement of surrendering the certificate.  See 
Prudential Insurance Co. of America v. Van Matre
, 158 Ill. App. 3d 298, 304, 511 N.E.2d 740, 744 (1987); see also Restatement (Second) of Torts §766, Comment 
j
, at 12 (1979) ("The rule applies *** to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary [or substantially certain] consequence of his action").  As plaintiff alleged in her third-amended complaint, Margaret and Abendroth "intentionally *** interfered with [her] expectation that she would be entitled to the proceeds yielded by the *** [c]ertificate of [d]eposit."  Instead of an expectation of payment, plaintiff now has an expectation of legal complications.  The trial court could have reasonably found that Margaret "injured" or "lessened in value" plaintiff's economic interest in the certificate of deposit.  See 765 ILCS 1005/4 (West 2000).  See also 
Hines v. Allstate Insurance Co.
, 298 Ill. App. 3d 585, 587-88, 698 N.E.2d 1120, 1123 (1998) ("trial court's findings in a bench trial will not be disturbed unless they are against the manifest weight of the evidence.  A judgment is against the manifest weight of the evidence *** when findings [are] unreasonable").

We find further support for affirmance in the following language from 
In re Estate of Taggart
, 15 Ill. App. 3d 1079, 1086, 305 N.E.2d 301, 306-07 (1973), in which the Fifth District, construing section 4 of the Act, stated:  "[A] withdrawing joint tenant[,] in the absence of fraud, misrepresentation, [or] overreaching[,] *** is not legally accountable to the other joint tenant *** for funds *** withdrawn."  "Overreaching" means "to get the better of[,] *** typically by unscrupulous and crafty methods."  Merriam-Webster’s New Collegiate Dictionary 828 (10th ed. 2000).  One could reasonably conclude that cashing in the certificate of deposit on the false pretense that it was lost, with the intention of getting the better of plaintiff, fits the description of "overreaching."

          Defendants argue that even if plaintiff could recover from Margaret's estate, she cannot recover from Abendroth, for section 4 applies only to actions between cotenants (
Guth v. Texas Co.
, 64 F. Supp. 733, 734 (N.D. Ill. 1946), 
rev'd on other grounds
, 155 F.2d 563 (7th Cir. 1946)).  Plaintiff alleged that Abendroth intentionally interfered with her contractual relationship with the bank, and for that injury to her economic interest, the common law provides a recovery (see 
Prudential Insurance
, 158 Ill. App. 3d at 304, 511 N.E.2d at 744).

B. Whether Brashears Is a Necessary Party

          Defendants argue that as a joint tenant of the new certificate of deposit, Brashears was a necessary party and the trial court should not have entered the judgment without her joinder as a defendant.  They argue she "has an interest in the proceeds of that new certificate of deposit" and the court "could not order that one[-]half of those proceeds be turned over to plaintiff without affecting *** Brashears'[s] interest therein."  See 
Bovinett v. Rollberg
, 73 Ill. App. 3d 490, 494-95, 392 N.E.2d 27, 31 (1979).  That argument rests on an erroneous premise, namely, that the court required defendants to compensate plaintiff out of a particular account.  The court "granted [j]udgment against [d]efendants in the amount of $49,724.63, which [was] one-half the new certificate [of deposit]."  The court also "awarded [j]udgment amounting to one-half the interest *** accruing to the entire [certificate of deposit]."  The new certificate of deposit provided merely the measure of damages.  It is not necessarily the 
res
 out of which defendants must pay the judgment.

III. CONCLUSION

          For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.